## PEOPLE *v.* MORELAND.

1. APPEAL AND ERROR—SAVING QUESTION FOR REVIEW.
   Questions will generally not be entertained on appeal unless first presented for the trial court's determination, but an exception exists when it would result in fundamental injustice to apply this rule.

2. SAME—SAVING QUESTION FOR REVIEW—PREVENTION OF INJUSTICE.
   Reading by the jury of a newspaper story about the case being decided by them containing statements damaging to defendant by mentioning one previous conviction and implying other matters which could not be admitted as evidence unless defendant testified and then only for impeachment *held*, a matter of fundamental injustice to defendant that can be corrected by the appellate court even though there was no objection at the trial.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 553 *et seq.*
[2] 5 Am Jur 2d, Appeal and Error § 631; 53 Am Jur, Trial § 893.
[3] 53 Am Jur, Trial §§ 895, 1105, 1109.
[4] 41 Am Jur 2d, Indictments and Informations § 197.
[5] 29 Am Jur 2d, Evidence § 251 *et seq.*

3. Jury—Impeachment of Verdict.

Affidavits by 2 members of a jury that a newspaper article containing statements harmful to defendant that would be inadmissible as evidence was read by jurors and discussed by them during deliberations *held,* admissible under the rule that allows jurors to testify in impeachment of their verdict as to facts bearing on the question of the existence of any extraneous influence.

4. Criminal Law—Information—Former Offenses.

An information charging a person with a substantive crime should not contain any statements of other offenses by the defendant; if after conviction the prosecution wishes to have the defendant dealt with as a repeating offender it should file a separate information charging the prior convictions (CLS 1961, § 769.12).

5. Same—Evidence—Materiality.

Letters written by principal prosecution witness which contained no reference to the offense charged and which were not offered to impeach the witness *held,* properly excluded from evidence in the absence of a proper foundation for them.

Appeal from Kalamazoo, Fox (Raymond W.), J. Submitted Division 3 December 6, 1967, at Grand Rapids. (Docket No. 2,546.) Decided July 25, 1968.

John Richard Moreland was convicted of breaking and entering in the nighttime with intent to commit larceny, fourth offense. Defendant takes delayed appeal by leave granted. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *James D. Ryan,* Assistant Prosecuting Attorney, for the people.

*Gordon H. Kriekard,* for defendant on appeal.

J. H. Gillis, J. On September 17, 1963, the defendant, John Richard Moreland, was convicted by

a jury of breaking and entering in the nighttime with intent to commit larceny.[1] The information further charged that "said offense hereinabove charged is hereby charged as a fourth offense,"[2] and thereupon recited three alleged prior convictions of the defendant.

Before the selection of the jury and in the absence of the veniremen, the defendant's counsel objected to a procedure in which the jury would be informed of the prior convictions. Defendant claimed that the jury should first determine his guilt on the breaking and entering charge and then, if he was found guilty of that charge, be called back to determine whether or not he was guilty as a fourth offender. The court declined to follow this procedure and thereupon the defendant entered what was termed a "plea of guilty" to the 3 prior convictions alleged in the information. The court then ruled that unless the defendant elected to take the stand, the prosecutor would be prohibited from introducing any evidence pertaining to the defendant's prior convictions. A jury conviction resulted and the trial court thereafter sentenced the defendant to be placed on probation for a 5-year period.

Approximately 1–1/2 years later the defendant was brought before the court as a probation violator, the defendant's probation was revoked and he was sentenced to serve a prison term of 20–30 years. Application for delayed appeal was granted by this Court.

---

[1] CL 1948, § 750.110 (Stat Ann 1962 Rev § 28.305), as in effect at the time of the trial in this case, read as follows: "Any person who shall break and enter in the nighttime with intent to commit any felony, or any larceny therein, any dwelling house, tent, hotel, office, store, shop, warehouse, barn, granary, factory or other building, structure, boat or ship, railroad car or any private apartment in any of such buildings, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 15 years."

[2] CLS 1961, § 769.12 (Stat Ann 1954 Rev § 28.1084). Under the terms of this statute the defendant in this case could have been imprisoned for a maximum term of life.

A major issue in this appeal concerns a newspaper article which appeared in the Kalamazoo Gazette on September 13, 1963. The trial had begun the previous day, but due to certain preliminary matters, the jury was not impanelled until the 13th. The article was captioned "Man Faces Fourth Offense Trial" and read in full as follows:

"John R. Moreland, 36, of 447 W. Walnut, today faced a Kalamazoo circuit court jury, charged with breaking and entering in the nighttime and as a fourth offender.

"Judge Raymond W. Fox Thursday denied a motion for continuance (postponement) presented by Moreland's attorney, John Vlachos. Vlachos agreed to handle Moreland's case Tuesday. Prior to that time, Fred Sauer, Sr., had provided counsel.

"Vlachos argued that continuance was necessary to permit him to acquaint himself with Moreland's situation.

"John L. Schwendener, county prosecutor, opposed the motion, saying that Vlachos provided no testimony or affidavits to support the continuance request.

"Moreland will stand trial for the March 18, 1960, burglary of the Comstock Beer Store.

"The trial is being held at this time because Moreland served about two years in an Indiana prison for another 1960 burglary. He was released less than a year ago.

"Moreland remains free on $10,000 bond. His trial is scheduled to begin Friday. If convicted, he faces a possible life sentence."

The next trial date was September 17, 1963, at which time defense counsel, out of the presence of the jury, informed the trial judge of this article and made a motion to reserve the right to "poll" the jurors after verdict concerning whether any of them had read the story and been influenced by it. This

motion was denied and counsel explicitly refused to move for a mistrial.

It appears that after the trial two jurors approached defense counsel concerning the newspaper article. Each of them later made an affidavit which stated that the contents of the article were disclosed and discussed in the jury room during the deliberations.

The prosecution's position in this appeal is that, since there was no motion for mistrial or request for the court to examine the jurors as to their knowledge of the article's contents, the question was not properly saved for review. Chief reliance is placed upon the concurring opinion in *People* v. *Nick* (1960), 360 Mich 219. While we are in full agreement with the propriety of the rule that questions will not be heard on appeal unless first presented for the trial court's determination (*Haggerty* v. *MacGregor* [1968], 9 Mich App 671), we note that an exception exists when to apply the rule would result in "fundamental injustice."[3] In our opinion this case comes within the exception. The story relates the fact of at least one prior conviction and supports a clear inference that defendant had been convicted of crime on two additional occasions. Evidence of such convictions would normally have been admissible at trial only if defendant had testified in his own behalf, and then for the limited purpose of impeachment. Defendant, however, did not take the stand. Since the newspaper article's existence and contents had not been brought out before the jury in open court, there was no charge given as to the narrow purposes for which the contents could

---

[3] *People* v. *Dorrikas* (1958), 354 Mich 303, 316. The exception has been not infrequently invoked. *People* v. *Steeneck* (1929), 247 Mich 583; *People* v. *Holmes* (1940), 292 Mich 212; *People* v. *Kelsey* (1942), 303 Mich 715; *Morris* v. *Radley* (1943), 306 Mich 689; *People* v. *Ignofo* (1946), 315 Mich 626; *People* v. *Limon* (1966), 4 Mich App 440; *People* v. *Baker* (1967), 7 Mich App 471.

have been considered, even if the contents were proper matter for disclosure in this case. It was therefore a matter of fundamental injustice to defendant that the jury, in weighing guilt, discussed and considered his prior convictions.

Having decided that the matter concerning the article is properly before us, we must next determine whether the jurors' affidavits should be considered in this regard. On the motion for new trial, the prosecution repeatedly asserted that the affidavits were not admissible, as well as that the defense had not preserved the objection for review. The opinion of the circuit court judge indicates that the basis for denial of the motion was "the defendant has waived any right in my opinion to raise the question at this time." Though the judge gave a good deal of attention to the admissibility problem, he did not think it necessary to rule upon it.

Defendant's contention that the affidavits are admissible is based on two cases: *People* v. *Van Camp* (1959), 356 Mich 593; *Mattox* v. *United States* (1892), 146 US 140 (13 S Ct 50, 36 L Ed 917).

First, the *Mattox Case*. Because a clear understanding of that case is crucial to our own, extended quotation is necessary (pp 147–149):

"In *United States* v. *Reid,* 53 US (12 How) 361, 366 [13 L ed 1023, 1025], affidavits of two jurors were offered in evidence to establish the reading of a newspaper report of the evidence which had been given in the case under trial, but both deposed that it had no influence on their verdict. Mr. Chief Justice Taney, delivering the opinion of the court, said: 'The first branch of the second point presents the question whether the affidavits of jurors impeaching their verdict ought to be received. It would perhaps hardly be safe to lay down any general rule upon this subject. Unquestionably such evidence ought always to be received with great

caution. But cases might arise in which it would be impossible to refuse them without violating the plainest principles of justice. It is, however, unnecessary to lay down any rule in this case, or examine the decisions referred to in the argument. Because we are of opinion that the facts proved by the jurors, if proved by unquestioned testimony, would be no ground for a new trial. There was nothing in the newspapers calculated to influence their decision, and both of them swear that these papers had not the slightest influence on their verdict.' The opinion thus indicates that public policy which forbids the reception of the affidavits, depositions, or sworn statements of jurors to impeach their verdicts, may in the interest of justice create an exception to its own rule, while at the same time the necessity of great caution in the use of such evidence is enforced.

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict.

"This distinction is thus put by Mr. Justice Brewer, speaking for the Supreme Court of Kansas in *Perry* v. *Bailey,* 12 Kan 539, 545: 'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven may be heard. Under this view of the law the affidavits were properly received. They tended to prove something which did not essentially inhere

in the verdict, an overt act, open to the knowledge of all the jury, and not alone within the personal consciousness of one.'

"The subject was much considered by Mr. Justice Gray, then a member of the Supreme Judicial Court of Massachusetts, in *Woodward* v. *Leavitt*, 107 Mass 453, where numerous authorities were referred to and applied, and the conclusions announced, 'that on a motion for a new trial on the ground of bias on the part of one of the jurors, the evidence of jurors as to the motives and influences which affected their deliberations, is inadmissible either to impeach or to support the verdict. But a juryman may testify to any facts bearing upon the question of the existence of any extraneous influence, although not as to how far that influence operated upon his mind. So a juryman may testify in denial or explanation of acts or declarations outside of the jury room, where evidence of such acts has been given as ground for a new trial.' [Citing cases.]

"We regard the rule thus laid down as conformable to right reason and sustained by the weight of authority. These affidavits were within the rule, and being material their exclusion constitutes reversible error."

This case represented a significant departure from the absolute rule, nearly unquestioned for over a century since its inception with Lord Mansfield in *Vaise* v. *Delaval*, 1 T R 11, 99 Eng Rep 944 (K B, 1785), that no juror may impeach his verdict. The thrust of the *Mattox Case* was partially blunted by certain language of the Supreme Court in *McDonald* v. *Pless* (1915), 238 US 264 (35 S Ct 783, 59 L Ed 1300); however, as asserted in the thoroughly-researched dissent of Justice Peters in *Sopp* v. *Smith* (1963), 59 Cal 2d 12 (27 Cal Rptr 593, 377 P2d 649), the experience in the lower federal courts indicates that *Mattox* is still the favored position.

Justice Peters' dissent and Wigmore's discussion[4] of the majority rule indicate repeated textual and decisional criticism of the rule. Rule 301 of the ALI Model Code of Evidence departs markedly from the old rule.[5] Wigmore's heavily-documented view of the Mansfield doctrine is: "Having no sound basis of policy (as its modern repudiation now testifies), it had also no basis of precedent." 8 Wigmore on Evidence (3d ed), § 2352, p 696. United States Supreme Court Justice William Brennan, then a member of the New Jersey Supreme Court, wrote the opinion which aligned New Jersey with the *Mattox Case.* In the opinion he stated in part:

"The exclusion, thus first based upon a policy against self-stultification, in later decisions, particularly of American courts, was also based upon a policy to avoid encouraging tampering with jurors, perjury and other such fraudulent practices. * * * A storm of criticism soon surrounded the indiscriminate application of the rule, particularly in fact settings where, as here, it patently worked injustice. Its critics invariably pointed out its inconsistency from an evidentiary standpoint in that it permitted a bailiff or other court officer who had been spying on the jury to testify as to misconduct, but disallowed the testimony of those who really knew what happened. * * *

---

[4] 8 Wigmore on Evidence (3d ed), §§ 2352–2354, pp 695–717.

[5] Rule 301 states: "Whenever any act, event or condition known to a member of a petit or grand jury is a subject of lawful inquiry, any witness, including every member of the jury, may testify to any material matter, including any statement or conduct or condition of any member of the jury, whether the matter occurred or existed in the jury room or elsewhere, and whether during the deliberations of the jury, or in reaching or reporting its verdict or finding, or in any other circumstances, except that upon an issue as to the validity of a verdict or indictment no evidence shall be received concerning the effect which anything had upon the mind of a juror as tending to cause him to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was reached."

"Too, it was difficult to see why jurors' admissions of misconduct destructive of a verdict should expose them to criminal prosecution and not also be reason for setting aside the contaminated verdict, or how upholding such a verdict would deter attempts at jury tampering, perjury or other fraudulent practices." *State* v. *Kociolek* (1955), 20 NJ 92, 98, 99 (118 A2d 812, 815).

We turn next to the *Van Camp Case,* where defendant urged the *Mattox* decision upon the Michigan Supreme Court, which responded:

"Appellant, however, seeks to rely upon the exception to the rule pertaining to jurors' affidavits stated in *Mattox* v. *United States,* 146 US 140 (13 S Ct 50, 36 L ed 917), by arguing that this affidavit showed defendant had been prejudiced by outside influence brought to bear upon the jury. We have inspected the affidavit with care in this regard. The sentence in the affidavit relied upon is generalized, ambiguous and vague. There is no showing that any juror was influenced. In short, the affidavit does not by any means meet the *Mattox* test." *People* v. *Van Camp* (1959), 356 Mich 593, 601, 602.

Upon such scant language we are asked to decide the status of the *Mattox* rule in Michigan. Though *Van Camp* admits of certain inferences, it at least leaves the question open for decision when a sufficient affidavit is presented. We think that these affidavits are clearly sufficient. Therefore, having the issue squarely before us, we opt for the *Mattox* view and rule these affidavits admissible.[6]

The denial of the motion for new trial is reversed, the conviction vacated and a new trial ordered.

---

[6] It is to be noted that CLS 1961, § 600.1230 (Stat Ann 1962 Rev § 27A.1230) deleted the words "No juror shall be questioned for any verdict rendered by him." Compare CL 1948, § 618.41. The committee comment to the present section reads: "Provision prohibiting questioning jurors eliminated as preventing correction of injustice."

We think it appropriate, for purposes of the retrial, to comment upon two other questions raised by this appeal. The first is the manner in which defendant was charged in this case. The information accused him of the breaking and entering "as a fourth offense," and then specified the dates and places of the three alleged prior convictions. We suggest that the information be amended by deleting any reference to the prior convictions. If the defendant is again convicted, it would appear to be a better procedure to file a separate information charging the prior convictions. Cf. *People* v. *Cairns* (1966), 4 Mich App 633. See also *Spencer* v. *Texas* (1967), 385 US 554 (87 S Ct 648, 17 L Ed 2d 606); *Burgett* v. *Texas* (1967), 389 US 109 (88 S Ct 258, 19 L Ed 2d 319).

Secondly, defendant argues for the admissibility of two letters allegedly written by the principal prosecution witness. The court excluded them from evidence when the defendant attempted to have them admitted into evidence while the addressee was on the witness stand. The letters made no reference to the crime with which defendant was charged. Under the posture of the case the court properly excluded the letters. The letters were not offered for the purpose of impeaching the testimony of the author and a proper foundation had not been laid for their admission.

Reversed; the conviction is set aside and a new trial ordered.

HOLBROOK, P. J., and BURNS, J., concurred.