NEMETH v FORD MOTOR COMPANY

1. EVIDENCE—HEARSAY—STATEMENT OF WITNESS.

The written statement of an eyewitness to an accident, who did not testify, made shortly after the incident and introduced into evidence as an account of the accident as part of the investigating police officer's report, was clearly hearsay because it was a statement made extrajudicially and offered to prove the truth of the matter asserted.

2. EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—CONDITIONS FOR ADMISSIBILITY.

The res gestae exception to the hearsay rule allows the admission of res gestae statements; the conditions upon which such statements will be allowed in evidence are: (1) there is a startling occasion, startling enough to produce nervous excitement and render the utterance spontaneous and unreflecting; (2) the statement must have been made before there has been time to contrive and misrepresent; and, (3) the statement must relate to the circumstances of the occurrence preceding it.

3. EVIDENCE—HEARSAY—RES GESTAE EXCEPTION—WRITTEN STATEMENTS.

A statement written 1-1/2 to 2 hours after an accident did not fall into the res gestae exception to the hearsay rule where there was a total lack of proof that the statement was the product of excitement and a doubt that the statement was spontaneous.

4. EVIDENCE—HEARSAY—WITNESSES—EXPERT WITNESS—CROSS-EXAMINATION.

Cross-examination of an expert witness which explores the basis of his opinion does not legitimize hearsay evidence as acceptable for substantive purposes, but affects only the weight of that testimony.

Appeal from Wayne, Michael L. Stacey, J. Sub-

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 29 Am Jur 2d, Evidence § 493 *et seq.*

mitted Division 1 April 15, 1975, at Detroit. (Docket No. 19993.) Decided May 29, 1975.

Complaint by Wayne Nemeth against Ford Motor Company for damages arising out of an automobile accident. Judgment for defendant. Plaintiff appeals. Reversed and remanded for a new trial.

*Ripple & Chambers, P. C.* (by *John J. Grech),* for plaintiff.

*Alexander, Buchanan & Seavitt* (by *Wayne L. Ogne),* for defendant.

Before: ALLEN, P. J., and BRONSON and N. J. KAUFMAN, JJ.

N. J. KAUFMAN, J. Plaintiff appeals from a Wayne County Circuit Court jury verdict of no cause of action. Plaintiff, Wayne Nemeth, brought suit against defendant for injuries caused through the alleged negligent operation of an automobile owned by defendant.

At trial, plaintiff claimed that while he was driving in the far-left lane of westbound Moross Avenue in the City of Detroit, a vehicle, driven by one of defendant's employees, which plaintiff had observed in a standing position on the island separating east and westbound Moross, suddenly pulled out in front of his car. Plaintiff testified he was unable to avoid the collision and struck the right rear of defendant's vehicle.

The position at which the plaintiff's vehicle struck defendant's vehicle became a crucial issue in determining who was at fault in the accident. The defendant's employee, Mark Tocco, testified that he was stopped in the island between east and westbound Moross, that he observed plaintiff's ve-

hicle in the left lane of westbound Moross, that he pulled out into the center lane of Moross and was struck directly in the rear. Two other persons witnessed the accident. One, William Aldenbrand, a friend of the plaintiff, testified at trial. He was following plaintiff and saw the collision. His testimony regarding which lane plaintiff was occupying when the collision occurred is confusing, but he clearly testified that plaintiff struck defendant in the right rear after defendant had pulled out in front of plaintiff. Aldenbrand claimed that plaintiff's car was traveling at about 30 miles per hour.

The other eyewitness to the accident was one Anthony Newman. Neither plaintiff nor defendant called Mr. Newman as a witness at trial although both sides had subpoenaed him. However, a statement written by Mr. Newman at the request of the investigating police officer and made a part of his report, was read into evidence, over plaintiff's objection. That statement read:

"Black car hit *rear left* of T-Bird. T-Bird *was in center lane of highway.* Black car appears to be occupying two lanes—straddling white lines.

"After contact, both cars moved together for approximately 20 feet, T-Bird separated and went into spin hitting tree with rear." (Emphasis supplied.)

The "black" car belonged to plaintiff.

On appeal, plaintiff raises as his sole claim of error the contention that the trial court committed reversible error in admitting this statement into evidence. Plaintiff claims that the statement was hearsay evidence and did not come within any of the recognized exceptions to the hearsay rule.

The statement of Anthony Newman was clearly hearsay. It was made extrajudicially and offered to prove the truth of the matter asserted. *Ruhala v*

*Roby,* 379 Mich 102, 123; 150 NW2d 146, 155 (1967). The crucial question in this case is whether, as defendant claims, the res gestae exception to the hearsay rule, also variously referred to as the excited or spontaneous utterance exception, applies to the statement.

The police officer testified that Mr. Newman wrote this statement at about 5:30 or 5:45 on the evening of the accident at the hospital to which the parties were taken on the evening of the accident. The accident occurred at 4 p.m. The record does not indicate that Mr. Newman was involved in the accident or received any injuries. At appellate argument, defendant's counsel stated that Mr. Newman had driven one of the parties to the hospital following the accident. There was no testimony he was in an excited or agitated state when he wrote the statement.

The rationale behind and the criteria to determine the res gestae exception have been explored by this Court in *Rice v Jackson,* 1 Mich App 105, 110–111; 134 NW2d 366, 368 (1965):

"Whether labeled 'excited utterances,' 'spontaneous exclamations,' or more generally, '*res gestae* statements,' they are admissible because special reliability is thought to be furnished by the excitement which suspends the powers of reflection and fabrication.

"In Michigan, the law regarding *res gestae* is clear. From *Rogers v Saginaw-Bay R. Co.* 187 Mich 490 [153 NW 784] (1915), to *Holtz v L. J. Beal & Son, Inc,* 339 Mich 235 [63 NW2d 627] (1954), the conditions upon which such statements will be allowed in evidence are (1) that there is startling occasion, startling enough to produce nervous excitement, and render the utterance spontaneous and unreflecting; (2) that the statement must have been made before there has been time to contrive and misrepresent; and (3) the statement must

relate to the circumstances of the occurrence proceding [sic] it."

It cannot be disputed that the first and third elements necessary to bring this exception into play are present here. An automobile accident qualifies as sufficiently startling, *Rice, supra,* and plaintiff does not dispute that the statement relates to the occurrence. We need only determine, then, whether the statement was made before there was time to contrive or misrepresent. Time is, of necessity, the most important factor in this determination. Indeed, it appears to be the only factor on which the trial court relied. A longer delay than 2 hours has not, of itself, precluded the use of the exception. *People v Noble,* 23 Mich App 100; 178 NW2d 118 (1970). However, the more the statement is removed from the event, the more important other factors become in determining whether the statement is in fact spontaneous and not the result of reflection. See McCormick, Evidence (2d ed), § 297, pp 705–707. In this case, the trial court did not determine whether the declarant ever was or continued to be excited or upset, *People v Noble, supra;* whether he was physically harmed or in pain, *People v Ivory Thomas,* 14 Mich App 642; 165 NW2d 879 (1968); or that the event was of a continuing nature, causing a continuing excitement, *Rice v Jackson, supra.* In fact, the circumstances of the statement negate any of these conclusions.

Indeed, the fact that Mr. Newman drove one of the parties to the hospital may make his statement more unreliable. If his statement to the investigating officer was partially based on a conversation with one of the parties, the hearsay testimony becomes one step further removed from the actual statement.

We have found no case in which a written statement was deemed to be a spontaneous utterance. While it is not impossible, though quite improbable, that a written statement could qualify, the reflection inherent in committing words to a written form would seem to cast considerable doubt on an assertion that the statement is spontaneous. This circumstance, combined with the 1-1/2 to 2 hour delay and the total lack of any proof that the statement was in fact the product of excitement, compels the conclusion that the trial court erred in permitting the statement to be read to the jury.

Defendant claims on appeal that Newman's statement was admissible as part of the foundation requisite to the admission of the investigating officer's expert testimony. After the defendant's counsel had brought out in cross-examining the officer the statement by Newman, plaintiff qualified the officer as an expert witness and asked his opinion of the positions of the vehicles at the time of impact. One of the bases used by the officer in giving his opinion was the Newman statement. Defendant now argues that, since the officer relied in part on the Newman statement pursuant to GCR 1963, 605, defendant's counsel could have required the officer to read the statement on re-cross-examination.[1]

We reject defendant's contention for two rea-

---

[1] "Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge, in his discretion, so requires. The witness may state his opinion and reasons therefor without first specifying data on which it is based, *but upon cross-examination he may be required to specify such data.* The judge, in his discretion, may require that a witness, before testifying in terms of opinion or inference, be examined first concerning the data upon which the opinion or inference is founded. Testimony of expert witness in the form of opinions or inferences otherwise admissible is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact." GCR 1963, 605 (emphasis supplied).

sons. First, plaintiff's use of the officer as an expert witness was in response to the admission of the Newman statement. Allowing defendant's claim would constitute our holding that plaintiff's qualification of the officer as an expert witness was a waiver of his earlier objection to the admission of the disputed statement. Such a holding would penalize plaintiff's counsel for having made the proper objection to potentially inadmissible evidence.

Second, the cross-examination of an expert witness which explores the basis of his opinion does not legitimize hearsay evidence as acceptable for substantive purposes. Rather, the adducing of hearsay evidence as a basis for expert testimony affects only the weight of that testimony.

We find the admission of the Newman statement to have been reversible error. The pivotal issue in determining liability was the relative location of the parties' automobiles. Inasmuch as Newman was the only disinterested witness available, his statement must be considered to have had significant weight in the jurors' deliberations.

Reversed and remanded for a new trial. Costs to plaintiff.