PEOPLE v COLLINS

1. CRIMINAL LAW—ENTRAPMENT—POLICE CONDUCT—OBJECTIVE TEST.

The defense of entrapment is measured by the objective test of whether the police conduct in the particular case falls below standards to which common feelings respond for the use of governmental power; the question is whether, regardless of the predisposition to crime of the particular defendant involved, the governmental agents have acted in such a way as is likely to instigate or create a criminal offense and the agents' involvement in criminal activities went beyond the mere offering of an opportunity to commit a crime.

2. CRIMINAL LAW—ENTRAPMENT—OBJECTIVE TEST—DRUGS AND NARCOTICS.

Police conduct in a narcotics case does not amount to entrapment, upon application of the objective test, where a defendant suffered no pressure from the undercover narcotics agents, their requests for marijuana were directed to the defendant's brother, the defendant without any request, inducement or persuasion by the agents obtained and delivered marijuana to them and the agents did not pose as a friend or confederate of the defendant.

3. CRIMINAL LAW—WITNESSES—RESPONSIVE TESTIMONY—OTHER CRIMINAL ACTS—INVITED ERROR.

A defendant may not be heard to object to unfavorable testimony by a police officer about suspected prior crimes by the defendant where the testimony is clearly responsive to a question

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 21 Am Jur 2d, Criminal Law §§ 143–145.

[2, 4] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 43, 46, 47.
Entrapment to commit offense with respect to narcotics law. 33 ALR2d 883.

[3] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 46.
30 Am Jur 2d, Evidence § 1175.
Admissibility, in prosecution for illegal sale of narcotics, of evidence of other sales. 93 ALR2d 1097.

[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

asked by defense counsel; the testimony falls within the invited error rule.

4. DRUGS AND NARCOTICS—DELIVERY—PROCURING AGENT DEFENSE—
STATUTES.

The procuring agent defense is not available to a defendant charged with delivery of a controlled substance because under the Controlled Substances Act, a crime has been committed regardless of any agency relationship between the defendant and a narcotics agent or between the defendant and the suppliers if there is an actual, constructive, or attempted delivery.

5. DRUGS AND NARCOTICS—DELIVERY—EVIDENCE—IDENTIFICATION
METHODS—MARIJUANA—APPEAL AND ERROR.

A defendant charged with delivery of marijuana is foreclosed on appeal from attacking the methods employed to identify the marijuana where the defendant voiced no objection to the methods at the trial stage.

Appeal from Cass, James E. Hoff, J. Submitted May 7, 1975, at Grand Rapids. (Docket No. 21574.) Decided August 13, 1975.

Charles Collins was convicted of delivery of a controlled substance. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Michael E. Dodge,* Prosecuting Attorney, for the people.

*Elizabeth Schwartz,* Assistant State Appellate Defender, for defendant.

Before: R. B. BURNS, P. J., and BASHARA and M. J. KELLY, JJ.

BASHARA, J. Defendant, Charles Collins, was convicted on April 5, 1974 of delivery of a controlled substance, MCLA 335.341; MSA 18.1070(41), and appeals.

Officer Michael Garrison and Richard Smith, both Caucasian, were engaged in an undercover

operation involving narcotics traffic in the black area of Dowagiac. Garrison was a police officer working out of the Cass County Sheriff's Department and Smith was a civilian observer.

Over a 2-1/2 month period prior to November 11, 1973, the date of the alleged illegal delivery by the defendant, the two agents visited local bars and restaurants in an attempt to make contact with narcotics dealers. One of the restaurants frequented by them was the Soul Stop Restaurant owned by the defendant's family. There is conflicting testimony in the evidence as to how many times the agents had been to the restaurant, however, it appears that it may have been as many as 12 times. On the prior visits the agents never spoke to the defendant. The defendant testified that he had seen the agents in the restaurant but had never talked to them before the night in question.

On the evening of the arrest, the two men went to the Soul Stop Restaurant looking for a man named Tina Collins, defendant's brother. Officer Garrison had previously purchased marijuana from Tina and sought to make a second purchase. At the restaurant Officer Garrison asked Tina where he could buy some narcotics. Tina Collins was noncommittal. At this time defendant was not present. Tina Collins then requested Officer Garrison to give him a ride across town. The purpose for the ride is disputed. Officer Garrison testified that he did not know the purpose, while Tina Collins testified that the purpose was to pick up the defendant. In any event, the defendant was picked up by the agents and Tina Collins. On the return trip and back at the restaurant the agents repeatedly asked Tina Collins for marijuana. However, the agents did not ask the defendant for any

marijuana. Defendant then noticed someone from whom the agents could obtain marijuana. The defendant went behind the restaurant and purchased the marijuana with the funds supplied by the agents. The defendant contends that as a matter of law these facts constitute entrapment.

Our Supreme Court in *People v Turner,* 390 Mich 7, 22; 210 NW2d 336 (1973), adopted the objective test for entrapment as enunciated by Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423, 441, 445; 93 S Ct 1637; 36 L Ed 2d 366 (1973). The focus of the objective test:

"Is not on the propensities and predisposition of a specific defendant, but on 'whether the police conduct revealed in the particular case falls below standards, to · which common feelings respond, for the use of governmental power.'

\* \* \*

"Phrased another way the question is whether—regardless of the predisposition to crime of the particular defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense.

\* \* \*

"This does not mean, of course, that the Government's use of undercover activity, strategy, or deception is necessarily unlawful. \* \* \* Indeed, many crimes, especially so-called victimless crimes, could not otherwise be detected. Thus, government agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime an opportunity to do so.

\* \* \*

"But when the agents' involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then—regardless of the character or propensities of the particular person

induced—I think entrapment has occurred." (Citations omitted.)

It appears from the facts in this case that the defendant suffered no pressure from the agents. The defendant admits that the requests for marijuana were not made to him but rather to his brother. There is absolutely no evidence to suggest that either agent's conduct was of a kind that could induce or instigate the commission of a crime. In fact, the record shows otherwise, that is, the defendant without any request, inducement or persuasion by the agents obtained and delivered the marijuana to them.

Nor is this a case, as defendant contends, where the agents posed as a friend or confederate of the defendant in order to induce the prohibited conduct. The defendant admits that up until the night in question he had never spoken to either of the agents. The fact that defendant had seen both agents in the restaurant about 12 times cannot be said to come within the above prohibited police conduct. Therefore, we find as a matter of law that upon application of the objective test, the police conduct does not amount to entrapment. In accordance with such finding it is unnecessary to consider appellant's request for an evidentiary hearing on the issue of entrapment.

The second issue revolves around the following cross-examination of Officer Garrison by defense counsel quoted below:

"*Q.* And, before this particular evening, then, this defendant wasn't a suspect or he wasn't on any list of people for you to be looking out for?

"*A.* If he was, I had no prior knowledge to it, sir.

"*Q.* Well, he wasn't on any that you saw?

"*A.* No, I had no personal knowledge if he was on the list, sir.

"*Q.* But, you did see lists of suspects?

"*A.* No, sir, I never had any lists of suspects.

"*Q.* Didn't you have information, at least, names and addresses and discriptions *[sic]* passed along to you of people to be on the look-out for?

"*A.* The Collins' name was passed along to me to be on the look-out for as possible armed robbery suspects, and B and E suspects."

Defense counsel then objected to Officer Garrison's reference to the fact that defendant was a possible robbery and B and E suspect and made a motion for a mistrial which was denied. The trial court then cautioned the jury to totally disregard the reference to criminal activity by the defendant.

The defendant's contention is that a police officer on cross-examination by defense counsel may not answer a question in an unresponsive manner so as to volunteer information about prior crimes that may have been committed by the defendant. See *People v McCartney,* 46 Mich App 691; 208 NW2d 547 (1973), which prohibits open-ended questions by prosecutors to police officers that result in volunteered or unresponsive answers that are inadmissible.

"It is common learning that a party obtaining a *responsive answer* * * * to a *question asked by himself* has waived objection by the very asking; * * * . Thus, the only question usually can be only to responsiveness." 1 Wigmore, Evidence (3rd ed), § 18, p 345, fn 34. In the present case defense counsel asked a series of questions to Officer Garrison relating to "lists" of suspects that he may have seen. Then came the question relating to whether information concerning suspects' names

had been passed on to which Officer Garrison made the objectionable reply. The whole series of questions by defense counsel were extremely broad and general and there was nothing which would suggest that defense counsel intended to confine his question to the lists of narcotics suspects. It can only be said that Officer Garrison's answer was responsive to the question.

The present case is also clearly distinguishable from *People v McCartney, supra. McCartney* deals with unresponsive answers of policemen while Officer Garrison's answer was responsive. *McCartney* prohibits an open-ended question by prosecutors, while this case deals with a question posed by defense counsel. In *State v Maggard,* 104 Ariz 462, 464, 465; 455 P2d 259, 261, 262 (1969), defense counsel on cross-examination asked the narcotics agent, who had purchased marijuana from the defendant, why he had not arrested the defendant immediately. The agent responded that he wanted to get to the "nucleus" of the drug traffic and that it was his intention to use the defendant to gain intelligence information on narcotics traffic. On appeal the court recognized the problems of police officers with years of experience in narcotics traffic volunteering unsolicited information but "where an answer is clearly responsive to the question asked * * * , it falls within the 'invited error' rule, and defendant may not be heard to object, when the answer is unfavorable".

Defendant's third issue is whether the Michigan Controlled Substances Act, MCLA 335.304(1); MSA 18.1070(4)(1), abrogates the procuring agent defense. Under *People v Williams,* 54 Mich App 448; 221 NW2d 204 (1974), the procuring agent defense is not available to a defendant charged with delivery of a controlled substance because under the

Controlled Substances Act if there is an actual, constructive or attempted delivery, a crime has been committed regardless of any agency relationship, whether it be between the defendant and a narcotics agent or between the defendant and the suppliers.

The final issue for review is whether the admission into evidence of the marijuana delivered by defendant to Officer Garrison was improper because the tests employed to identify the substance are not generally recognized and accepted as reliable, even though the defendant failed to object to its admissibility. When a defendant at the trial stage voices no objection to the methods employed by the expert, he is foreclosed from later attacking those methods on appeal. See *People v Alexander,* 56 Mich App 400, 402; 223 NW2d 750 (1974).

Affirmed.