PEOPLE v HAGLE

Opinion of the Court

1. Criminal Law—Evidence—Hearsay.

Hearsay is an out-of-court statement offered to prove the truth of the matter asserted.

2. Criminal Law—Evidence—Affidavits—Hearsay—New Trial—Appeal and Error—Record.

An affidavit which was inadmissible hearsay should have been stricken from the record at a hearing on a motion for a new trial and it should not be considered on appeal.

3. Jury—Impeachment of Verdict.

Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow a verdict because being personal it` is not accessible to other testimony.

4. Jury—Impeachment of Verdict—Prejudicial Information—Communication to Jury.

A defendant who was convicted of delivery of a controlled substance was not denied a trial by an impartial jury, although one juror had had prior contact with the defendant's residence and had been told that the house was a mess and that loud parties occurred there, where (1) the information was not so prejudicial as to deny the defendant a "fair shake" and (2) any information that the juror with such knowledge communicated to the other jurors was innocuous.

5. Appeal and Error—Instructions to Jury—Failure to Object—Manifest Injustice.

Failure to object to erroneous jury instructions precludes reversal absent manifest injustice.

References for Points in Headnotes

[1] 29 Am Jur 2d, Evidence §§ 493, 497.
[2] 3 Am Jur 2d, Affidavits § 29.
[3, 4, 9] 76 Am Jur 2d, Trial §§ 1219–1234.
[5] 75 Am Jur 2d, Trial §§ 906, 907.
[6] 30 Am Jur 2d, Evidence §§ 1088, 1092, 1124.
[7, 8] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 41.

6. EVIDENCE—WITNESSES—NUMBER OF WITNESSES.

The number of witnesses a party garners is irrelevant in determining where the truth lies.

7. DRUGS AND NARCOTICS—DELIVERY—PROCURING AGENT DEFENSE—CONTROLLED SUBSTANCES.

A procuring agent defense to the sale of a controlled substance is not available to a defendant who denies commission of the offense.

8. DRUGS AND NARCOTICS—DELIVERY—PROCURING AGENT DEFENSE—CONTROLLED SUBSTANCES ACT.

The procuring agent defense to the sale of drugs and narcotics is not available under the new Controlled Substances Act (MCLA 335.301 *et seq.;* MSA 18.1070[1] *et seq.).*

DISSENT BY M. J. KELLY, J.

9. JURY—IMPEACHMENT OF VERDICT—NEW TRIAL—DRUGS AND NARCOTICS—DELIVERY.

*A defendant who was convicted of delivery of a controlled substance should be given a new trial where (1) a juror had prior knowledge concerning the defendant's residence, (2) the issue of extraneous influence on the jury was dealt with in a perfunctory manner by the trial court without findings of fact or conclusions of law, (3) one could surmise that revelations made by the one juror had some impact on the rest of the jury, (4) the revelations may have included a characterization of defendant's residence as a "dope den" and a statement that the neighbors were frightened of the goings on at the residence, (5) the official transcript indicates that the jury was instructed that they may use personal knowledge as evidence, and an attempt to show the official transcript should have read may not use personal knowledge was irregular, and (6) the case was a close one; the sum total of these irregularities denied defendant the full measure of due process.*

Appeal from St. Clair, Halford I. Streeter, J. Submitted November 7, 1975, at Detroit. (Docket No. 21822.) Decided March 8, 1976.

Thomas Hagle was convicted of delivery of a controlled substance. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *Peter E. Deegan,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: D. E. Holbrook, P. J., and J. H. Gillis and M. J. Kelly, JJ.

J. H. Gillis, J. A jury convicted defendant of delivery of a controlled substance, methylphenidate, contrary to MCLA 335.341(1)(a); MSA 18.1070(41)(1)(a). Defendant was sentenced to a 3-1/2 to 7 year prison term, and appeals as of right.

Several allegations of error are made on appeal, the most serious of which questions the impartiality of the jury.

Shortly after the trial ended, defense counsel received an anonymous letter which charged certain improprieties had occurred during jury deliberations. Pursuant to this letter, defense counsel moved for a new trial. At a hearing which followed, the defense introduced two affidavits, one from juror William Johnston and one from defense counsel's secretary describing a conversation between herself and another member of the jury.

In his affidavit, juror Johnston stated that, at the time the jury was drawn, he did not realize that he had had any previous contact with 1430 Tenth Avenue, Port Huron, Michigan, which was the home of defendant and his only defense witness, and the location at which the drug buy was arranged. Johnston further stated that during the course of trial, when a picture of the house was admitted into evidence, he realized that the house was the same one that he had had several contacts

with in recent months in his capacity as an employee of the Michigan National Bank.

Johnston's affidavit also stated:

"(6) That during the latter part of 1973 and/or early part of 1974, the undersigned William Johnston went to the 1430 Tenth Avenue, Port Huron, Michigan, address with several other members of a crew from the Michigan National Bank to board up the house in order to preserve it for the Michigan National Bank.

"(7) That to the best of the recollection of the undersigned William Johnston, he went to the residence at 1430 Tenth Avenue on three separate occasions to board up the house on behalf of the Michigan National Bank.

"(8) That on the first occasion that the undersigned William Johnston was at the house, a young girl came into the house and was looking through the mess, apparently trying to find some items. The young girl stated to William Johnston that 'her husband tore up the place last night and broke the windows,' or words to that effect. The undersigned William Johnston did not and does not know whether the young girl was the wife of Thomas Hagle or not.

"(9) That to the best of the undersigned William Johnston's recollection, on the second occasion that William Johnston was at the 1430 Tenth Avenue residence, he met an older gentleman who lived next door to the 1430 Tenth Avenue residence and the older gentleman told William Johnston that he was glad that the people were gone from the residence since his bedroom was right close to the residence and that the people there were very loud.

"(10) That on one of the occasions that the undersigned William Johnston went to the residence at 1430 Tenth Avenue on behalf of the Michigan National Bank, he requested that a Port Huron police officer go to the residence with the bank people to first go through the residence and determine whether or not anyone was there prior to Mr. Johnston and his fellow workers doing any work on the house. The police officer did go to the residence and did inspect the residence

prior to the work being done on this particular occasion and no one was in the residence at the time.

"(11) That at some time, apparently later in 1973, the undersigned William Johnston was informed by another employee of the Michigan National Bank at that time, a woman, that she lived across the street from the residence at 1430 Tenth Avenue that the bank was boarding up and that she was relieved that the people were gone from the residence since she was scared of all the things that were going on at the residence, the late night parties, and so forth, although drugs were never mentioned.

"(12) That the only matter with respect to the undersigned William Johnston's previous contacts with the residence at 1430 Tenth Avenue that the undersigned William Johnston recalls relating to the other jurors during their deliberations was the fact that he realized during the trial when the picture was put into evidence that this was the residence that he had boarded up on behalf of the Michigan National Bank.

"(13) That after the entire jury did reach its verdict in the case against Thomas Hagle, the undersigned William Johnston recalls relating to a fellow juror whose name he does not recall that the undersigned William Johnston felt the jury had reached a proper verdict in view of what William Johnston had heard about the house in his work for the Michigan National Bank.

"(14) That the two statements above referred to by William Johnston in the jury room are the only statements that William Johnston recalls making about his prior knowledge of the house during the entire period of the jury deliberations."

Both the prosecutor and the defense counsel were present when this affidavit was taken. At the hearing on the motion, after the defense counsel presented his arguments, the prosecutor added that Johnston made one further statement which was not included in the affidavit.

*"Mr. Nickerson [Prosecutor]:* * * * Mr. Johnston did state at the end of our interview, when asked, that he reached his decision in this case based solely on the evidence he observed in court, and he affirmatively stated to us that any knowledge he had of the home was not taken into consideration by him in reaching a verdict on the charge.

"Isn't that correct?

*"Mr. Beauchamp [Defense Counsel]:* I would agree that is a statement made by Mr. Johnston."

The other affidavit was given by Barbara Haase, secretary to the defense counsel, and stated that she talked by telephone with Irvin Stewart, one of the other jurors on the case. Juror Stewart told her that juror Johnston said he had boarded up the home at 1430 Tenth Avenue in the course of his employment. She also stated that juror Stewart told her he recalled juror Johnston relating something about talking to one of the neighbors of the home at 1430 Tenth Avenue and something about the house being called a "dope den", but that his memory was vague on these points. She also said that juror Stewart told her he did not believe that juror Johnston's remarks swayed his opinion in the matter either way.

Defense counsel also stated on the record that there was another affidavit forthcoming from another one of the jurors, Beatrice Stiles, in which juror Stiles would state that during the deliberations of the jury, juror Johnston indicated to the jury that he worked for the Michigan National Bank as a maintenance man and had been up to the house at 1430 Tenth Avenue, although he did not know at the time it was the residence of the defendant. Her affidavit would also state that juror Johnston further related that neighbors of the house at 1430 Tenth Avenue were frightened of

the things that were going on at the residence, although drugs were never mentioned by Johnston.

After hearing the arguments on the motion, the trial judge denied the motion for a new trial.

To begin with, in reviewing this question on appeal, we consider only the affidavit of juror Johnston in arriving at our decision. The affidavit of Ms. Haase, secretary to defense counsel, ought to be stricken. This affidavit states that juror Johnston told juror Stewart certain things, juror Stewart told them to Ms. Haase who then wrote them down in affidavit form. Even if the statements related by Johnston to Stewart are not considered to be hearsay,[1] the affidavit itself still constitutes double hearsay (the written sheet constitutes one level of hearsay; the statements contained in it allegedly made by Stewart to Ms. Haase constitute another level of hearsay). Because this affidavit is inadmissible in a court of law, it should not be considered here. Likewise, defense counsel's promise of another purported affidavit to come from still another juror remains, at this time, an empty one. Until it is produced for the court's consideration, it is a legal nullity.

Turning therefore to the affidavit of juror Johnston, it is important to note what this document states. Basically, Johnston swore that he was a juror in the Hagle case. On voir dire, he had no recollection of any prior dealings with either Hagle or Hagle's house. Sometime during the trial, he realized that he had visited the Hagle house three

---

[1] Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. *Nemeth v Ford Motor Co,* 61 Mich App 359; 232 NW2d 404 (1975). The statements allegedly made by Johnston to Stewart are probably not hearsay, because the underlying truth of the statements is irrelevant. That is, if the jury had been told that Hagle's house was a "dopehouse", the statement is relevant even if untrue.

times in his capacity as a bank employee. He had engaged in the boarding up of the house. He had several conversations with neighbors, etc., as related in the affidavit. Most importantly, Johnston swore that the only thing he told his fellow jurors during deliberations was that he had boarded up the house on behalf of the bank.

Turning to the merits of defendant's claim, we must begin by examining the holding of *People v Moreland,* 12 Mich App 483; 163 NW2d 257 (1968). In *Moreland, supra,* defendant had been convicted of breaking and entering with intent to commit larceny. On appeal, we held that affidavits produced by two jurors, stating that a certain newspaper article had been read and discussed during jury deliberations, indicated sufficient prejudice so as to allow defendant a new trial. The article discussed by the jurors

"[R]elate[d] the fact of at least one prior conviction and support[ed] a clear inference that defendant had been convicted of crime on two additional occasions. Evidence of such convictions would normally have been admissible at trial only if defendant had testified in his own behalf, and then for the limited purpose of impeachment. Defendant, however, did not take the stand. Since the newspaper article's existence and contents had not been brought out before the jury in open court, there was no charge given as to the narrow purposes for which the contents could have been considered". *Moreland, supra,* at 487–488; 163 NW2d at 259.

In deciding that a jury verdict was impeachable by the jurors themselves, we adopted the rule of *Mattox v United States,* 146 US 140; 13 S Ct 50; 36 L Ed 917 (1892).

Both Judge HOLBROOK and I reaffirm our holding in *Moreland, supra.* For two reasons, however, we do not believe that case mandates reversal here.

First, the information available to juror Johnston was not of the prejudicial nature that the information known by the *Moreland* jurors was. Johnston had been told only that defendant's house was a mess, and that loud parties had occurred there. "Drugs" were never mentioned. While it is unfortunate that Johnston had this knowledge, this fact did not deny defendant a "fair shake".

More importantly, Johnston's affidavit states that he only informed the other jurors of the fact that he boarded up the house. This information is innocuous. Unlike *Moreland, supra,* the record before us does not show that the allegedly prejudicial matters known by Johnston were relayed to the other 11 jurors. In *Mattox, supra,* adopted by this Court in *Moreland, supra,* the United States Supreme Court drew a sharp distinction between those situations where one juror has access to prejudicial information and those situations where the entire jury has access:

"There is, however, a recognized distinction between what may and what may not be established by the testimony of jurors to set aside a verdict.

"This distinction is thus put by Mr. Justice Brewer, speaking for the Supreme Court of Kansas in *Perry v Bailey,* 12 Kan 539, 545 [1874]: 'Public policy forbids that a matter resting in the personal consciousness of one juror should be received to overthrow the verdict, because being personal it is not accessible to other testimony; it gives to the secret thought of one the power to disturb the expressed conclusions of twelve; its tendency is to produce bad faith on the part of a minority, to induce an apparent acquiescence with the purpose of subsequent dissent; to induce tampering with individual jurors subsequent to the verdict. But as to overt acts, they are accessible to the knowledge of all the jurors; if one affirms misconduct, the remaining eleven can deny; one cannot disturb the action of the twelve; it is useless to tamper with one, for the eleven

may be heard.'" *Mattox, supra,* 146 US 140, 148–149;
13 S Ct 50, 52–53; 36 L Ed 917, 920.

For the above stated reasons, we do not feel that
the record before us supports the contention that
defendant was judged by a biased jury.[2]

Defendant next argues that reversible error oc-
curred when the trial judge instructed the jury
that "in weighing all the evidence as to a fact it is
proper to consider the number of witnesses testify-
ing on one side or the other as to that fact * * * ".
Defendant did not object to this instruction. His
failure to do so precludes reversal, absent manifest
injustice. *People v Hammack,* 63 Mich App 87; 234
NW2d 415 (1975). We find no manifest injustice
here. We do not, however, approve of this instruc-
tion. The number of witnesses a party garners is
quite irrelevant in determining where the truth
lies. We caution the trial bench against using the
above instruction.

Finally, defendant alleges error in the trial
judge's failure to give a "procuring agent" instruc-
tion. See *People v Turner,* 38 Mich App 479; 196
NW2d 799 (1972), *aff'd in part, rev'd in part* 390
Mich 7; 210 NW2d 336 (1973). This defense is not
available to one who, as defendant did here, com-
pletely denies commission of the offense. *People v
Davis,* 53 Mich App 94; 218 NW2d 787 (1974).
Furthermore, other panels of this Court have
ruled that under the new Controlled Substances

---

[2] In conjunction with his first argument on appeal, defendant points
to the trial judge's instruction to the jury that "if you have personal
knowledge of any particular fact in this case, *such knowledge may be
used as evidence".* (Emphasis supplied.) This instruction is obviously
improper. The lower court record reveals, however, that upon motion
of the prosecutor, an affidavit was filed by the court reporter. The
court reporter indicated that the judge actually said "such knowledge
may *not* be used as evidence", and that a transcribing error had
occurred. The prosecutor's motion to file this correcting affidavit was
not opposed by defense counsel. We find no error here.

Act, the defense is no longer a legally recognizable one. See *People v Williams,* 54 Mich App 448; 221 NW2d 204 (1974), *People v Collins,* 63 Mich App 376; 234 NW2d 531 (1975).

Other allegations of error are without merit.

Affirmed.

D. E. Holbrook, P. J., concurred.

M. J. Kelly, J. *(dissenting).* I would reverse for these reasons:

1. The whole business of extraneous influence on the jury was dealt with in a perfunctory manner; the hearing transcript covers 14 pages. The ruling of the trial court was without findings of fact or conclusions of law. Two affidavits were submitted but neither was the subject of a ruling by the trial judge. The majority has stated that the affidavit of Ms. Haase, the secretary, ought to be stricken, perhaps so; but it was neither stricken nor admitted below and I don't think we can prescind from its consideration here. The only exhibit entered on this issue was the anonymous letter which opened this Pandora's box:

"Mr. N. Beauchamp. I was at the Hagle trial on Friday, March 29th. One of the jury was hired to board up the house on Tenth Street, Tom's [defendant's] home. He talked with at least one neighbor. A juror said the guy told about it in the jury room. That was not legal. He sat the back row near right end. Citizen voter. It was not a fair shake. Is a mistrial. Please check by police."

2. Taking the affidavit of juror Johnston together with the anonymous letter, one could surmise that the revelations had some notable impact on the jury.

3. If secretary Haase's affidavit is correct, and

the revelations included a characterization of defendant's residence as a "dope den", the verdict should have been summarily set aside and a new trial granted.

4. If the revelations included a statement that the neighbors were frightened of the goings on at the residence (as attributed to juror Beatrice Stiles) that alone would require careful consideration, and at the very least a finding as to why it would not be considered prejudicial.

5. According to the official transcript the jury was instructed:

"However if you have personal knowledge of any particular fact in this case, such knowledge may be used as evidence."

Attached to the appellee's brief is an affidavit of court reporter dated May 20, 1975 in support of an order amending the transcript dated May 27, 1975 interjecting the adverb "not". These documents so far as I can determine, were not noticed for hearing and were not docketed. Coming as they do, after the affidavits of juror Johnston and secretary Haase and the hearing on the motion for new trial, I find them irregular.

6. This was a close case. The jury requested the re-reading of considerable portions of the testimony and copies of the court's instructions concerning circumstantial evidence and reasonable doubt. All requests were complied with and here there was no irregularity. I mention this aspect only to show that there was indeed debate occurring in the jury room.

The sum total of these irregularities appears to have denied defendant the full measure of due process. I would reverse and remand for a new trial.