Ronald A. OWENS, Appellant,

v.

STATE of Alaska, Appellee.

No. 4331.

Supreme Court of Alaska.

June 20, 1980.

Richard G. Lindsley, Asst. Public Defender, Juneau, Brian Shortell, Public Defender, Anchorage, for appellant.

James L. Hanley, Asst. Dist. Atty., Patrick J. Gullufsen, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

OPINION

RABINOWITZ, Chief Justice.

Ronald Owens was convicted of burglary in a dwelling and grand larceny. On appeal, he claims that he was prejudiced by jury exposure during his trial to evidence previously ruled inadmissible by the trial judge. We find that Owens waived his right to object to this error. Therefore, his conviction is Affirmed.

On January 10, 1978, John Brookman reported a burglary to the Sitka police. The following day the Sitka newspaper reported the burglary and listed the items stolen. The next morning the police received a telephone call from an anonymous woman, who said that Owens had offered to sell her some equipment which she thought might be the same as that listed in the paper. Using the tape recording of this call, the police obtained a warrant to search Owens' residence, where they found many of the stolen items. After waiving indictment, Owens was charged by information with burglary and grand larceny.

Prior to trial, Owens moved to suppress any testimony about the anonymous phone call. The superior court granted his motion, but advised that the state could raise the question again if the police source of information about Owens' involvement in the burglary became an issue at trial. The state believed that this issue did indeed arise at trial, so it again moved for permission to introduce testimony about the call. Again, however, the superior court ruled for the defense.

In order to have the evidence admitted, the prosecution made one last effort to find the anonymous caller, so that she might testify. On the second day of trial, the police had the following message broadcast over Sitka's only radio station:

On January 12, 1978, a person anonymously called the Sitka Police Department to report the possible location of a color TV and stereo equipment which had been taken from the John Brookman residence. It would now be appreciated if that person would again call the police department and talk with Sergeant Thornton or Assistant District Attorney Jim Hanley.

The prosecutor expressed his intent that the message be broadcast only when the jury was in court. But neither he nor the police made sure that the broadcast was so limited, and in fact the radio station aired the message at a morning hour before the jurors were due to report for the trial proceedings.

Owens brought the message to the attention of the court the following day. He requested no relief at that time other than that the state be enjoined from any further communication of this sort, but also went on to "reserve the right to ask for a mistrial" at the conclusion of the case should a guilty verdict be returned.[1] The state responded with the suggestion that the court make a general inquiry of the jurors to see if any of them had heard anything about the case outside the courtroom. But Owens opposed any inquiry, even a general inquiry of the jurors. The court stated that it would respect Owens' request not to have the jury queried in a general manner, but pointed out that Owens, by his tactical decision, was depriving the court of the ability to take any actions necessary to cure the harm caused by jury exposure to the inadmissible evidence. Since the court found nothing in the broadcast too prejudicial for action by the court to cure, it indicated that it considered Owens to be waiving the jury exposure issue by objecting to a general inquiry of the jurors.

Following the verdict of guilty on both counts, the superior court, at Owens' re-

1. Contrary to Owens' contention, we are convinced after examining the record that he made no motion for a mistrial at this point in the trial. More particularly, at one point in the colloquy between counsel and judge, Owens' attorney said, "[I]n order not to prejudice the defendant my motion for a mistrial *will follow* the verdict." (emphasis added)

quest, asked the jurors whether they had knowledge of the radio broadcast. This inquiry showed that one juror had actually heard the radio message, and that she had discussed it with a few of the other jurors. The discussion lasted at most five minutes. No juror stated that the broadcast had any influence on his or her decision.

Owens moved for a new trial on the ground of jury exposure to the broadcast.[2] The superior court denied Owens' motion. This appeal followed.

In *Mares v. United States*, 383 F.2d 805 (10th Cir. 1967), *opinion after remand*, 409 F.2d 1083 (10th Cir. 1968), *cert. denied*, 394 U.S. 963, 89 S.Ct. 1314, 22 L.Ed.2d 564 (1969), the court said:

> An accused may not withhold an objection to publicity occurring during a trial until an adverse verdict has been returned. This procedure would permit him to take a gambler's risk and complain only if the cards fell the wrong way. If the trial judge becomes aware of the publicity and orders a mistrial sua sponte, the hazard exists of a claim of double jeopardy on a retrial.

*Id.* at 808 (footnote omitted).[3] *See also Hall v. United States*, 396 F.2d 428, 429 (10th Cir.), *cert. denied*, 393 U.S. 986, 89 S.Ct. 462, 21 L.Ed.2d 447 (1968); *State v. Collins*, 150 N.W.2d 850, 861–62 (Minn.1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968); *State v. Palmigiano*, 115 R.I. 166, 341 A.2d 742, 743 (1975). Some action by the defense, either a mistrial motion or a request for examination of the jury, is necessary in order to allow the trial judge to consider whether a declaration of mistrial is in fact appropriate, or whether a cautionary instruction to the jury will suffice to counteract its exposure to the out-of-court publicity or information.[4] Ordinarily the absence of such action by the defense will waive the defendant's right to assert the error on appeal.

There are, of course, certain situations in which the defense may not be obligated to take action, because the jury's exposure to out-of-court information constitutes plain error.[5] For example, in *People v. Moreland*, 12 Mich.App. 483, 163 N.W.2d 257 (1968), a newspaper story was published during trial detailing Moreland's extensive prior criminal record. He moved at that time to poll the jurors *after* the verdict to determine whether any of them had read the article and been influenced by it. When his motion was denied, he explicitly declined to move for a mistrial. After trial, Moreland's attorney was contacted by two jurors, who said that the jury had discussed the article's contents. Based on their affidavits, he moved for a new trial, which motion the trial court denied. The Michigan Court of Appeals reversed:

> While we are in full agreement with the propriety of the rule that questions will not be heard on appeal unless first presented for the trial court's determination, we note that an exception exists when to apply the rule would result in "fundamental injustice." In our opinion this case comes within the exception. The story relates the fact of at least one prior conviction and supports a clear inference that defendant had been convict-

---

2. Alaska R.Crim.P. 33. This rule grants a trial judge the authority to order a new trial "if required in the interest of justice."

3. *Mares* involved the more usual situation of jury exposure to a prejudicial newspaper article, for which the prosecution is in no way responsible. But the logic of *Mares* nevertheless applies here.

4. The effectiveness of such a cautionary instruction should not be minimized. *See People v. Rivera*, 26 N.Y.2d 304, 310 N.Y.S.2d 287, 290, 258 N.E.2d 699, 701 (N.Y.1970) (citation omitted): "[A]n admonition to the jurors that they should consider only the proof adduced 'serve[s] a real purpose in drawing their attention to the unfairness of their considering anything but the record evidence.'" We recently approved the giving of this type of instruction as an acceptable alternative to questioning the jury about a newspaper article containing inaccuracies that appeared during trial. *Brown v. State*, 601 P.2d 221, 232–33 (Alaska 1979).

5. Alaska R.Crim.P. 47(b) provides:

    Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

ed of crime on two additional occasions. Evidence of such convictions would normally have been admissible at trial only if defendant had testified in his own behalf, and then for the limited purpose of impeachment. Defendant, however, did not take the stand. Since the newspaper article's existence and contents had not been brought out before the jury in open court, there was no charge given as to the narrow purposes for which the contents could have been considered, even if the contents were proper matter for disclosure in this case. It was therefore a matter of fundamental injustice to defendant that the jury, in weighing guilt, discussed and considered his prior convictions.

*Id.* 163 N.W.2d at 259 (citation and footnote omitted).

■ ' Owens argues that the same rationale should apply here. We cannot agree. This case is clearly distinguishable from *Moreland* because of the nature of the information that reached the jury. That the police learned about Owens through an anonymous telephone call is a fact unlikely to have any real bearing on the jury's deliberations, as opposed to *Moreland*'s revelation of prior convictions.[6] We conclude that the trial court here could have cured any possible prejudice with an instruction to the jury that they were to determine guilt or innocence solely on the basis of the evidence admitted at trial. Because Owens objected

to this procedure,[7] he has waived his right to raise on appeal this issue.

We also do not believe that reversal of Owens' conviction is warranted simply because of the prosecution's involvement with the broadcast. The broadcast was certainly misconduct on the part of the prosecutor. ABA Standards on Fair Trial and Free Press 8–1.1 (2d ed. tentative draft 1978) provides in part:

(a) A lawyer shall not release or authorize the release of information or opinion for dissemination by any means of public communication if such dissemination would pose a clear and present danger to the fairness of the trial.

(b) Subject to paragraph (a), from the commencement of the investigation of a criminal matter until the completion of trial or disposition without trial, a lawyer may be subject to disciplinary action with respect to extrajudicial statements concerning the following matters:

.    .    .    .    .

(vi) information which the lawyer knows or has reason to know would be inadmissible as evidence in a trial.

*See also* ABA Code of Professional Responsibility DR 7–107(B) & (D) (1969).

■ The court having ruled that evidence of the anonymous phone call was inadmissible, the prosecution had an obligation not to

---

**6.** As noted, all the jurors who heard or heard about the broadcast stated they were not influenced by the broadcast. Some admitted their curiosity was satisfied by learning how the police had determined to issue a search warrant for Owens' trailer, but otherwise it had no influence on their determination.

We have also independently assessed the possible prejudice of the jury exposure to the anonymous call, rather than relying on the jurors' statements that the information about the call did not influence their deliberations. We agree with those courts that have found jurors' own assessments to be unreliable. *See, e. g., State v. Williams*, 230 S.E.2d 742, 747 (W.Va. 1976) (citations omitted):

In many instances, jurors may not be sufficient judges of their own bias when they have been exposed to extrajudicial material during the trial of a case. Thus, this Court

has previously stated that specific questions should be asked in order to determine whether a juror, even without his own knowledge, may be biased or prejudiced.

*See also Marshall v. United States*, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959) (per curiam); *Briggs v. State*, 207 Tenn. 253, 338 S.W.2d 625 (1960). We may properly consider, however, and have considered, the brevity of the jury's discussion of the anonymous call.

**7.** Owens contends that a general inquiry of the jury would be prejudicial, as it would cause the jurors to believe the case was controversial, which belief might color their deliberations. He also argues that a general inquiry could not be specific enough; i. e., that the jury would not associate a general question about publicity with the broadcast at issue. We find no merit to either contention.

disseminate this information. The prosecution's purpose was seemingly an appropriate one of requesting assistance in obtaining evidence.[8] However, once the court had ruled this topic inadmissible, a public broadcast of this type made during trial was clearly in violation of the prosecutor's duty as an officer of the court to guarantee all criminal defendants their constitutional rights to a fair trial.

■ But the fact that the jury exposure to inadmissible evidence was the result of prosecutorial misconduct does not change our analysis of it as error. As we noted in *Alexander v. State*, 611 P.2d 469, at 478 (Alaska, May 2, 1980), plain error analysis is appropriate when failure to object to the misconduct in a timely fashion precludes the trial court from an ability to correct the error.[9] In this case, Owens objected to the prosecutor's action but further objected to the court making the kind of inquiry necessary to determine what correctional action to take.

Thus, having found the issue waived and no plain error appearing, the judgment of the superior court is AFFIRMED.

BOOCHEVER, J., not participating.

---

**8.** ABA Standards on Fair Trial and Free Press 8–1.1(c) (2d ed. tentative draft 1978) provides in pertinent part:

> It shall be appropriate for the lawyer, in discharge of official or professional obligations, . . . to request assistance in obtaining evidence; . . .

*See also* ABA Code of Professional Responsibility DR 7–107(A)(4) and (C)(3) (1969).

**9.** *See also Randall v. State*, 583 P.2d 196, 200 (Alaska 1978); *McMaster v. State*, 512 P.2d 879, 884 (Alaska 1973); *Howard v. State*, 491 P.2d 154, 156 (Alaska 1971); *Dimmick v. State*, 449 P.2d 774, 776 (Alaska 1969); *Sidney v. State*, 408 P.2d 858, 862 (Alaska 1965).