*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JORGE MORENO, | ) | |
| | ) | Supreme Court Nos. S-15067/15070 |
| Petitioner, | ) | (Consolidated) |
| | ) | |
| v. | ) | Court of Appeals No. A-10837 |
| | ) | Superior Court No. 2BA-09-00239 CR |
| STATE OF ALASKA, | ) | |
| | ) | O P I N I O N |
| Respondent. | ) | |
| _____ | ) | No. 6982 – January 30, 2015 |
| | ) | |
| MARY HICKS, | ) | |
| | ) | |
| Petitioner, | ) | Court of Appeals No. A-10820 |
| | ) | Superior Court No. 3GL-09-00126 CR |
| v. | ) | |
| | ) | |
| STATE OF ALASKA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petition for Hearing in File No. S-15067 from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Second Judicial District, Barrow, Michael I. Jeffery, Judge. Petition for Hearing in File No. S-15070 from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Glennallen, Daniel Schally, Judge pro tem.

Appearances: Josie Garton and John Page, Assistant Public Defenders, Anchorage, and Quinlan Steiner, Public Defender, Anchorage, for Petitioners. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Respondent.

Before: Fabe, Chief Justice, Winfree, Stowers, and Maassen, Justices. [Bolger, Justice, not participating.]

STOWERS, Justice.

## I.    INTRODUCTION

"Trial errors to which the parties did not object are reviewed for plain error."[1] In *Adams v. State* we held that plain error is "an error that (1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial."[2] These consolidated cases require us to clarify the standard for determining when a defendant intelligently waived an objection or made a tactical decision not to object.

Defendants in two criminal cases failed to object to errors at trial: in *Moreno v. State*, the admission of improper testimony regarding Jorge Moreno's exercise of his right to be free from compelled self-incrimination;[3] in *Hicks v. State*, the lack of a jury unanimity instruction when the prosecutor directed the jury that it could find Mary Hicks guilty of either of two episodes of allegedly driving under the influence of

---

[1]    *Khan v. State*, 278 P.3d 893, 896 (Alaska 2012) (citing *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011)).

[2]    *Adams*, 261 P.3d at 764.

[3]    *Moreno v. State*, Mem. Op. & J. No. 5819, 2013 WL 120907, at *1 (Alaska App. Jan. 9, 2013), *reh'g denied*, 2013 WL 120907, at *5 (Alaska App. Feb. 7, 2013).

alcohol.[4] Moreno and Hicks each sought plain error review, and in each case the court of appeals held that the defendant failed to show that the error was not the result of defense counsel's tactical decision not to object.[5] In *Moreno*, the court of appeals also applied a presumption that where the record is silent or ambiguous, defense counsel's inaction is tactical and precludes plain error review.[6]

Moreno and Hicks filed petitions for hearing before this court, arguing that the burden of proof should be on the State to show that their counsels' failures to object were the result of tactical decisions. They also contended that the court of appeals erroneously speculated on the purported tactical benefits they received due to their attorneys' lack of objections. Finally, they each requested an evidentiary hearing to develop the record on this issue.

We granted review to determine whether to apply an evidentiary presumption or to place a burden of proof on a party to establish that a defendant's lack of objection at trial was or was not the result of defense counsel's intelligent waiver or tactical decision not to object.[7] But we conclude that our case law compels neither result. Today we hold that defense counsel's tactical reason for failing to object, or counsel's

---

[4]    *Hicks v. State*, Mem. Op. & J. No. 5911, 2013 WL 203264, at *1 (Alaska App. Jan. 16, 2013).

[5]    *Moreno*, 2013 WL 120907, at *2-3; *Hicks*, 2013 WL 203264, at *3-4.

[6]    *Moreno*, 2013 WL 120907, at *5 (concluding that when a litigant pursues a claim of plain error on a silent or ambiguous record, the court will "focus on *whether there is a serious potential for* tactical inaction" because where "an attorney makes a conscious decision not to object to inadmissable evidence in order to gain a tactical advantage . . . the attorney is unlikely to make this decision a matter of record" (emphasis added)).

[7]    *Moreno v. State*, Nos. S-15067/15070 (Alaska Supreme Court Order, June 10, 2013).

intelligent waiver of an objection, should be plainly obvious from the record before foreclosing the reviewing court's consideration of the remaining plain error elements. We therefore reverse the court of appeals' decisions on this issue. But we conclude that Moreno suffered no prejudice despite the error in his case, and we affirm the court of appeals' decision upholding Moreno's conviction on this alternate ground. We remand Hicks's case to the court of appeals for further proceedings consistent with this opinion.

## II.    FACTS AND PROCEEDINGS

### A.    *Moreno v. State*

Jorge Moreno was charged with possession and delivery of methamphetamine and illegal sale of alcohol in a local option community.[8] At trial, Moreno's attorney asked the investigating officer whether the police had been able to verify that Moreno owned a jacket that contained a methamphetamine pipe.[9] The officer replied that Moreno had refused to speak to the police.[10] Moreno's attorney did not object to the officer's statement; instead, the attorney interrupted the officer and directed

---

[8]     *Moreno*, 2013 WL 120907, at *1. A local option community is one that has elected to prohibit the sale, importation, or possession of alcoholic beverages. *See* AS 04.11.491.

[9]     *Id*. at *1-2 (discussing the defense attorney's question: "And at no point during your investigation did you determine who that jacket belonged to?" and the officer's reply: "Correct, ma'am. There [were] no identifying items [in the jacket] and the defendant refused to speak to us about it, but we did photograph where that — that came out of . . . ." (emphasis omitted)).

[10]     *Id*. at *1.

the officer to reply "[y]es or no."[11] Moreno was convicted, and he appealed arguing that the officer's reference to his silence was impermissible.[12]

The court of appeals concluded that Moreno's attorney's question elicited the officer's testimony and that counsel "apparently made a tactical decision not to object to the officer's answer."[13] Both the State and the court of appeals identified potential reasons why Moreno's counsel failed to object.[14] The State argued that Moreno likely sought "to impeach the police investigation and to lay a foundation for arguing that the [S]tate had not proved that Moreno knowingly possessed the pipe."[15] The court also offered its own possible explanations: that the defense attorney perceived the officer had made an inadmissible comment and chose to preserve "at least one colorable issue" on appeal or that the attorney recognized an objection would have focused the jury's attention on Moreno's silence.[16]

---

[11]     *Id.* at *1-2.

[12]     We have held that questions or comments by the State about a defendant's pre-arrest silence are generally inadmissible under Alaska Rule of Evidence 403 and that questions or comments by the State on a defendant's post-arrest silence are prohibited by article I, section 9 of the Alaska Constitution. *Adams v. State*, 261 P.3d 758, 765-67 (Alaska 2011). It is unclear whether Moreno had been arrested when police questioned him about the jacket. *Moreno*, 2013 WL 120907, at *2.

[13]     *Moreno*, 2013 WL 120907, at *1.

[14]     *Id.* at *2-3.

[15]     *Id.* at *2

[16]     *Id.* at *3.

The court of appeals additionally examined whether Moreno had suffered any prejudice from his counsel's failure to object.[17] The court of appeals interpreted *Adams* as holding that a reviewing court should consider the following factors in determining whether a prosecutor's comments on a defendant's silence resulted in harmless error:

> (1) [W]hether the conviction depended primarily on resolution of conflicting witness testimony; (2) whether any comments on the defendant's silence were made during the prosecutor's closing argument; (3) whether the reference was "express" rather than "brief and passing"; and (4) whether the evidence was "directly elicited by the prosecutor's questioning."[18]

The court of appeals examined these factors and concluded that the alleged error in Moreno's case was harmless beyond a reasonable doubt.[19]

Moreno petitioned the court of appeals for rehearing, arguing that the court improperly placed the burden on him to prove that his counsel did not make a tactical decision to withhold an objection to the officer's testimony.[20] The court of appeals denied his petition, reasoning that the plain error doctrine required the court to "focus on . . . a serious potential for tactical inaction."[21] The court relied on its decision in *Borchgrevink v. State*, which held that "when the record is silent or ambiguous . . . [an

---

[17]     *Id.*

[18]     *Id.*

[19]     *Id.*

[20]     *Id.* at *5.

[21]     *Id.*

appellate court] appl[ies] a presumption that the defense attorney's action (or, more precisely, inaction) was tactical."[22]

Moreno petitioned this court for hearing. We granted the petition and consolidated it with Hicks's petition.[23]

## B. *Hicks v. State*

Mary Hicks was arrested for and convicted of driving under the influence.[24] At her trial a village public safety officer testified that, while responding to a report that Hicks was driving under the influence, he located Hicks's truck parked in a spot at her friend's house that he knew had recently been vacant.[25] He also testified to observing Hicks enter the truck and start the engine.[26] He stated that Hicks then exited the truck and ran back inside the friend's house.[27] The officer spoke with Hicks at the friend's house, determined that she was intoxicated, and arrested her.[28] During closing arguments at Hicks's trial, the prosecutor told the jury that it could find Hicks guilty of either of the

---

[22]   *Id.* at *5 (omissions in original) (quoting *Borchgrevink v. State*, 239 P.3d 410, 421 (Alaska App. 2010)).

[23]   *Moreno v. State*, Nos. S-15067/15070 (Alaska Supreme Court Order, June 10, 2013).

[24]   *See Hicks v. State*, Mem. Op. & J. No. 5911, 2013 WL 203264, at *1 (Alaska App. Jan. 16, 2013).

[25]   *Id.*

[26]   *Id.*

[27]   *Id.*

[28]   *Id.* at *1-2.

two distinct driving or operating incidents: driving to the friend's house or starting the parked truck in front of the friend's house.[29]

This was obvious error under the Alaska Constitution's due process clause,[30] which we have interpreted to bestow on a criminal defendant the "right to have jurors 'all agree that the defendant committed a single offense.' "[31] Hicks did not object to the prosecutor's statement or ask the court to instruct the jury that it had to unanimously agree on one offense to return a guilty verdict.[32] The jury convicted Hicks of driving under the influence.[33]

Hicks appealed, arguing plain error. Before the court of appeals, the State proffered two possible tactical reasons for Hicks's failure to object.[34] First, the State asserted that "had she raised the issue in the trial court, the State might have sought to amend the indictment to charge her with two separate felony offenses."[35] Second, the State argued that Hicks's defense focused on attacking the strength of the evidence of the second incident when the officer observed Hicks start her engine.[36] The court of appeals concluded that Hicks's attorney made a tactical decision not to object because an

---

[29]    *Id.* at *3.

[30]    Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property without due process of law.").

[31]    *Khan v. State*, 278 P.3d 893, 899 (Alaska 2012) (quoting *State v. James*, 698 P.2d 1161, 1167 (Alaska 1985)).

[32]    *Hicks*, 2013 WL 203264, at *3.

[33]    *Id.* at *1.

[34]    *Id.* at *4.

[35]    *Id.*

[36]    *Id.*

objection would have emphasized that the jury could convict Hicks based solely on the evidence of her driving under the influence, which did not rely on the officer's disputed testimony.[37]

Hicks filed a petition for hearing. We granted Hicks's petition and consolidated it with Moreno's petition.[38]

## III. STANDARD OF REVIEW

These consolidated petitions present only questions of law to which we apply our independent judgment.[39] We will adopt the rule of law that "is most persuasive in light of precedent, reason, and policy."[40]

## IV. DISCUSSION

A. **It Was Error To Apply A Presumption On A Silent Or Ambiguous Record That Defense Counsel Made A Tactical Decision Not To Object And To Place The Burden On Defendant To Disprove This Presumption.**

In *Johnson v. State*, we explained why a general rule requiring a party in trial to object to a perceived error is necessary to preserve that error as a point on appeal:

> Typically, a litigant or defendant must raise an objection in the trial court in order to preserve that argument for appeal. This general preservation rule is a prudential gate-keeping doctrine adopted by the courts to serve important judicial policies: ensuring that there is "a ruling by the trial court that

---

[37]     *Id.* at *1, *4.

[38]     *Moreno v. State*, Nos. S-15067/15070 (Alaska Supreme Court Order, June 10, 2013).

[39]     *State v. Doe A*, 297 P.3d 885, 887 (Alaska 2013), *as modified on denial of reh'g* (Apr. 10, 2013).

[40]     *Id.* (quoting *Ford v. Municipality of Anchorage*, 813 P.2d 654, 655 (Alaska 1991)) (internal quotation marks omitted).

may be reviewed on appeal, . . . afford[ing] the trial court the opportunity to correct an alleged error," and creating a sufficient factual record "so that appellate courts do not decide issues of law in a factual vacuum."[41]

"But the general preservation rule is not absolute, and it is subject to [certain] exceptions, such as the plain error doctrine."[42] The plain error doctrine allows an appellate court to review issues not otherwise preserved where "there was [an] obvious and prejudicial error below affecting substantial rights that did not result from 'intelligent waiver or a tactical decision not to object.' "[43]

Under Alaska Criminal Rule 47(b), "[p]lain errors or defects affecting substantial rights may be noticed [sua sponte by the trial court][44] although they were not brought to the attention of the court." When the trial court fails to correct an error on its own initiative, however, plain error review on appeal operates "to mitigate . . . the harsh effects of a rigid application of the adversary method of trial."[45]

---

[41]      328 P.3d 77, 82 (Alaska 2014) (alteration in original) (footnotes omitted) (quoting *Alexander v. State*, 611 P.2d 469, 478 (Alaska 1980) and *Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011)).

[42]      *Id.*

[43]      *Id.* (quoting *Adams v. State*, 261 P.3d 758, 764 (Alaska 2011)).

[44]      *Cf. Adams*, 261 P.3d at 764 (noting that "Alaska Criminal Rule 47(b) allows *appellate* courts to notice '[p]lain errors or defects affecting substantial rights . . . although they were not brought to the attention of the court' " without restricting the rule's application to appellate proceedings (alterations in original) (emphasis added) (quoting Alaska R. Crim. P. 47(b))). We recently clarified in *Johnson* that plain error is a "prudential exception[]" to the general preservation rule; in other words, we retain inherent discretion to hear such appeals under the rubric of plain error as a common law doctrine. *Johnson*, 328 P.3d at 82 & n.24.

[45]      *Dorman v. State*, 622 P.2d 448, 459 (Alaska 1981) (alteration in original)
(continued...)

We use a four-part test when determining whether to review a defendant's claim of plain error.[46] The appellate court must find the error "(1) was not the result of intelligent waiver or a tactical decision not to object; (2) was obvious; (3) affected substantial rights; and (4) was prejudicial."[47] Plain error review operates as a safety valve allowing an appellate court to review unobjected-to errors "involv[ing] such egregious conduct as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice."[48]

These consolidated cases concern the tactical-decision prong of the plain error test announced in *Adams*.[49] While the remainder of the plain error test involves substantive requirements an appellate court must conclude are present to reverse on the basis of plain error, the tactical-decision prong acts as a bar to substantive review, preventing defense counsel from deliberately bypassing the contemporaneous-objection rule as part of a trial strategy.[50] We will not afford a defendant an after-the-fact review

---

[45](...continued) (quoting *Bargas v. State*, 489 P.2d 130, 133 (Alaska 1971)) (internal quotation marks omitted).

[46] *Adams*, 261 P.3d at 764.

[47] *Id.*

[48] *Id.* (alteration in original) (quoting *Raphael v. State*, 994 P.2d 1004, 1015 (Alaska 2000)) (internal quotation marks omitted).

[49] We recently revisited the plain error test in *Johnson v. State*, 328 P.3d 77 (Alaska 2014), where we reiterated *Adams*'s holding that "we will review unpreserved claims for plain error and reverse the trial court where there was obvious and prejudicial error below affecting substantial rights that did not result from 'intelligent waiver or a tactical decision not to object.' " *Id.* at 82 (quoting *Adams*, 261 P.3d at 764).

[50] *E.g.*, *Hammonds v. State*, 442 P.2d 39, 42, and 43 n.16 (Alaska 1968) (continued...)

of a claim of error when defense counsel made a tactical decision not to object or engaged in strategic gamesmanship to avoid the trial court's correction of the error in the first instance.[51]

In *Hicks*, the court of appeals concluded that "Hicks ha[d] not shown that she did not make a tactical decision to forgo a jury unanimity instruction" because (1) it "appear[ed] that the defense attorney tried to focus on the weakness in the State's proof" of one of the incidents; and (2) had Hicks raised the issue earlier, "the trial court might have allowed the State to add a second count of driving under the influence."[52] In *Moreno*, the court of appeals reasoned that "when the record is silent or ambiguous . . . [the court] appl[ies] a presumption that the defense attorney's . . . inaction . . . was tactical."[53] The court also speculated as to Moreno's counsel's reasons for not objecting[54] and stated that the test was whether, based on the

---

[50](...continued)
("There is here a clear intimation of a deliberate design to knowingly [forgo] a constitutional claim. Such a deliberate act on the part of counsel amounts to a waiver of appellant's constitutional right which is binding on appellant.").

[51]      *Id.* at 42-43.

[52]      *Hicks v. State*, Mem. Op. & J. No. 5911, 2013 WL 203264, at *3-4 (Alaska App. Jan. 16, 2013).

[53]      *Moreno v. State*, Mem. Op. & J. No. 5819, 2013 WL 120907, at *5 (Alaska App. Jan. 9, 2013), *reh'g denied*, 2013 WL 120907, at *5 (Alaska App. Feb. 7, 2013) (omissions in original) (alterations added) (quoting *Borchgrevink v. State*, 239 P.3d 410, 421 (Alaska App. 2010)).

[54]      *Id.* at *2-3.

record, "there is a serious potential for tactical inaction."[55] As explained below, neither approach accords with our prior case law up to and including *Adams*.[56]

## 1.    The tactical-decision case law from 1960-1980

In *Rank v. State*, we examined whether allowing trial testimony regarding the defendant's failure to take a lie detector test was reversible error where defense counsel did not object to this evidence at trial.[57] We reviewed the trial transcript and concluded that Rank's counsel "went into the subject [of his client's failure to take the test] in great detail in his cross-examination of a [S]tate witness and when [Rank] testified in his own defense."[58] Based on this clear indication in the record of defense counsel's tactics, we reasoned that "Rank had presumably taken the position that to explore the subject in detail would be advantageous to his cause."[59] But on appeal Rank "adopt[ed] the totally inconsistent position that he ha[d] suffered a grave disadvantage."[60] We held that Rank was "bound by the choice he first made in the court below. He ha[d]

---

[55]     *Id.* at \*5.

[56]     We divide our discussion of the tactical-decision case law into three categories:  (1) cases from 1960 to 1980; (2) cases from 1980 to 2000; and (3) the tactical-decision analysis in *Adams v. State*, 261 P.3d 758 (Alaska 2011).  We discern no significant changes in our tactical-decision analysis from one period to the next but have divided our discussion into these sections to assist the reader.

[57]     373 P.2d 734, 735 (Alaska 1962), *overruled in part on other grounds by Shafer v. State*, 456 P.2d 466 (Alaska 1969).

[58]     *Id.* at 736.

[59]     *Id.*

[60]     *Id.*

waived any error that might otherwise have occurred when testimony regarding the polygraph was first brought into the case by a [S]tate witness."[61]

In *Noffke v. State*, the trial judge received a question from the jury and responded by giving the jury a supplemental instruction without contemporaneously notifying the defendant and his counsel of the question or the court's answer.[62] Unlike in *Rank*, we noted "[t]here [was] nothing in the record to show that appellant's trial counsel had any knowledge . . . of the fact that the trial judge had given the jury this supplemental instruction" and consequently held that "it would work an injustice to appellant to hold that he is now precluded from questioning the propriety of the supplementary instruction" by not contemporaneously objecting to preserve the issue for appellate review.[63] In both *Rank* and *Noffke*, we focused on whether the record on its face clearly indicated defense counsel's obvious knowledge of the error.

In *Hammonds v. State*, defense counsel failed to object when a police officer testified to statements the defendant made after an inadequate *Miranda* warning.[64] Similar to *Rank* and *Noffke*, the issue before us was "not merely one of a technical failure to object in the trial court."[65] The trial record plainly indicated that defense counsel was aware of the requirements of *Miranda* and that he could have excluded his client's statements by objecting, but chose not to object because the statements were potentially

---

[61] *Id.*

[62] 422 P.2d 102, 103 (Alaska 1967).

[63] *Id.* at 106-07.

[64] 442 P.2d 39, 40-41 (Alaska 1968).

[65] *Id.* at 43.

exculpatory.[66] We concluded that there was "a clear intimation of a *deliberate* design to knowingly [forgo] a constitutional claim" and "[s]uch a deliberate act on the part of counsel amount[ed] to a waiver of appellant's constitutional right."[67] In other words, because counsel's failure to object was "an *intelligent* waiver of a known right,"[68] Hammonds could not complain on appeal that his Fifth Amendment privilege against self-incrimination was infringed upon because the record indicated that his counsel was aware of the requirements of *Miranda* and allowed the admission of his client's statements despite the constitutional violation.

Then in *Gafford v. State*, another lie detector case, the record revealed that Gafford's counsel had informed the court that he had decided not to request an instruction on the inadmissibility of information about the lie detector test because he "did not want 'to underline' the lie detector answer" elicited during cross examination.[69] We held "In view of the decision made at trial by his counsel, . . . appellant is now precluded from asserting that it was error for the trial court not to have instructed the jury to disregard [the witness's] reference to a lie detector [test]."[70]

---

[66]   *Id.* at 42 (referring to *Miranda v. Arizona*, 384 U.S. 436 (1966), which held that statements obtained from defendants during interrogation in a police-dominated atmosphere, without full warning of constitutional rights, were inadmissible in violation of their Fifth Amendment privileges against self-incrimination).

[67]   *Id.* (emphasis added).

[68]   *Id.* at 43 (emphasis added).

[69]   440 P.2d 405, 410 (Alaska 1968), *overruled on other grounds by Fields v. State*, 487 P.2d 831 (Alaska 1971).

[70]   *Id.*

Finally, in *Pulakis v. State*, the trial court, without objection from defense counsel, admitted testimony regarding two lie detector tests the defendant took.[71] We considered Pulakis's counsel's actions throughout the course of trial and concluded they "present[ed] a more compelling factual situation for finding an intelligent waiver of a known right than existed in *Rank*."[72] For example, defense counsel (1) questioned prospective jurors intensively on the subject of polygraph examinations; (2) elicited responses favorable to Pulakis's position; (3) minimized the importance of the polygraph evidence in his opening statement and closing argument; and (4) made no objection to the qualifications of the expert witness on the results of the polygraph examination or to the admissibility of that testimony.[73] We noted that "[i]n fact, counsel stated explicitly that there was no objection to the admission of the written report of the expert witness," and "[o]n cross-examination, . . . counsel obtained significant admissions from the expert about the unreliability of the polygraph test."[74] Defense counsel also requested highly favorable jury instructions on the issue, which were given by the superior court.[75] We concluded "that this entire pattern of events demonstrate[d] a clear, intelligent waiver of any privilege to exclude this evidence" based on defense counsel's trial strategy, thus precluding plain error review.[76]

---

[71] 476 P.2d 474, 477 (Alaska 1970).

[72] *Id.* at 480.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] *Id.*

These cases make clear that for an appellate court to decline plain error review because defense counsel made a tactical decision, it must be plainly obvious from the record on its face: (1) that counsel had an obvious awareness or knowledge of the error, and (2) that counsel made an intentional or tactical decision not to object to the error. Our case law has remained consistent on this point.

## 2. The tactical-decision case law from 1980-2000

In *Owens v. State*, the prosecution arranged for a radio broadcast on Sitka's only radio station in an effort to locate an anonymous caller to testify.[77] Unfortunately, the station broadcast the message during the morning hours before jurors were due to report for the trial.[78] Owens brought the broadcast to the court's attention the next day, but opposed the prosecution's suggestion that the court make a general inquiry of the jurors.[79] The superior court noted on the record that "it would respect Owens'[s] request not to have the jury queried in a general manner, but pointed out that Owens, by his tactical decision, was depriving the court of the ability to take any actions necessary to cure the harm caused by jury exposure to the inadmissible evidence."[80] The superior court "indicated that it considered Owens to be waiving the jury exposure issue by objecting to a general inquiry of the jurors."[81] On appeal we stressed that because Owens objected to a procedure that would have cured any possible prejudice, he waived his right

---

[77]   613 P.2d 259, 260 (Alaska 1980).

[78]   *Id.*

[79]   *Id.*

[80]   *Id.*

[81]   *Id.*

to raise this issue on appeal under plain error review.[82] It was Owens's attorney's intentional decision not to cure the error in the first instance that barred further plain error review.

In *Moss v. State*, a defense witness refused to testify and defense counsel asked that the witness be held in contempt.[83] The court took a short recess, during which defense counsel was permitted to confer with the witness.[84] Following the recess, defense counsel did not renew his attempt to compel the witness to testify under threat of contempt, made no further mention of the witness or counsel's proposed line of inquiry, and instead rested Moss's case.[85] On appeal Moss argued that the trial court should have compelled the witness to testify, that its failure to do so violated Moss's constitutional rights to due process and to confrontation, and that the court's failure to hold a hearing concerning the proposed testimony was plain error.[86] We summarily dismissed these contentions, concluding:

> [W]e believe that[,] given the tactical reasons that may have supported a decision to withdraw the witness, it was

---

[82] *Id.* at 262 ("We conclude that the trial court here could have cured any possible prejudice with an instruction to the jury that they were to determine guilt or innocence solely on the basis of the evidence admitted at trial. Because Owens objected to this procedure, he has waived his right to raise on appeal this issue." (footnote omitted)). We note that the trial judge in *Owens* did a commendable job making a clear record on this issue. Best practices for trial judges who become aware of an attorney's probable tactical decision not to object (or not to request a curative instruction) include making an inquiry and findings on the record outside the presence of the jury.

[83] 620 P.2d 674, 677 (Alaska 1980).

[84] *Id.*

[85] *Id.*

[86] *Id.*

incumbent upon counsel to renew his attempt to obtain the witness['s] testimony following the recess. During the recess counsel may have learned that the witness would not testify in a manner helpful to the defense and thus have decided not to proceed further with him. . . . [C]ounsel's decision to rest his case at that point is inconsistent with the present claim of error.[87]

In other words, we concluded that Moss's counsel made a tactical decision when he chose to forgo asking the court to compel the witness's testimony after speaking to the witness. While speculating somewhat on counsel's rationale for this particular trial strategy, we were careful to point out that the record reflected counsel's *intentional choice* not to go forward with this witness.[88] Thus, *Moss* is distinguishable from *Moreno* and *Hicks* where, on a silent or ambiguous record, the court of appeals applied a presumption that defense counsels' inaction was tactical.[89] In *Moss*, the record reflected that defense counsel made an affirmative decision to withdraw a witness and rest his client's case after conferring with the witness.[90] We did not apply a presumption that defense counsel's *inaction* was tactical; rather, we recognized that defense counsel's *action* of withdrawing the witness was tactical.

In *Dorman v. State*, we discussed the distinction between cases where defense counsel deliberately injects error at trial or makes a tactical decision not to object, and cases where defense counsel's lack of objection could have no tactical

---

[87]     *Id.* at 677-78.

[88]     *Id.*

[89]     *Hicks v. State*, Mem. Op. & J. No. 5911, 2013 WL 203264, at *4 (Alaska App. Jan. 16, 2013); *Moreno v. State*, Mem. Op. & J. No. 5819, 2013 WL 120907, at *5 (Alaska App. Jan. 9, 2013), *reh'g denied*, 2013 WL 120907, at *5 (Alaska App. Feb. 7, 2013).

[90]     *Moss*, 620 P.2d at 677-78.

benefit.[91]  During closing arguments at Dorman's trial, the prosecutor commented that the jury should infer guilt from the fact that Dorman remained silent between the time of his arrest and the time he was advised of his *Miranda* rights.[92]  Dorman's counsel failed to object.[93]  We noted that Dorman's counsel (1) failed to object to identical testimony during trial; (2) mentioned Dorman's *Miranda* rights during cross-examination; (3) asked for no curative instruction at the time; and (4) made no motion for a mistrial.[94]

Despite Dorman's counsel's awareness of *Miranda*, we held the failure to object was not tactical because Dorman had not "injected the issue of his silence into the case" and there could be no benefit to him in letting the potentially incriminating silence into evidence.[95]  In addressing whether counsel may have been inviting error, we concluded:

> There is no basis for the inference that defense counsel was trying to further Dorman's case by failing to object to the final argument comment, unless it is implied that defense counsel invited error for the purpose of obtaining a reversal on appeal.  *That conclusion, however, is not one which should be lightly inferred in any case, for it would preclude*

---

[91]  622 P.2d 448, 457-58 (Alaska 1981) (comparing *Davis v. State*, 501 P.2d 1026 (Alaska 1972) and *Hammonds v. State*, 442 P.2d 39 (Alaska 1968) with *Bargas v. State*, 489 P.2d 130 (Alaska 1971)).

[92]  *Id.* at 456.  There had also been testimony regarding Dorman's reactions to questions *after* he had been informed of his *Miranda* rights, despite Dorman's counsel's objections. *Id.* at 452.  The trial court prohibited the prosecutor from referencing that testimony during closing arguments. *Id.*

[93]  *Id.* at 457.

[94]  *Id.*

[95]  *Id.* at 458.

*review of the most fundamental defects under the plain error doctrine . . . .*[96]

In other words, we explicitly refrained from construing counsel's inaction as a tactical decision absent a clear indication in the record. Without an affirmative act by counsel indicating his awareness of the existence of a known right and some indication in the record of a conscious failure to preserve the issue, we conducted the remainder of the plain error analysis.[97]

Finally, in *Raphael v. State*, the prosecutor told the trial judge at an ex parte hearing that the State's key witness was likely to recant, was intoxicated, and should be incarcerated until she testified.[98] Without first notifying Raphael or his attorney of the prosecutor's statements, the trial judge granted the prosecutor's request, jailing the key witness and placing her children in protective custody.[99] Raphael was convicted and appealed, arguing that the trial court denied him due process given the potentially coercive effect of the witness's incarceration on her testimony and his right to be present

---

[96]   *Id.* at 458 (emphasis added). We also noted Dorman's counsel's "many objections" to testimony regarding Dorman's silence *after* receiving a *Miranda* warning compared to Dorman's counsel's failure to object to testimony regarding Dorman's silence *before* receiving a *Miranda* warning. *Id.* We stated that this discrepancy further indicated that counsel's failure to object to evidence of Dorman's pre-*Miranda*-warning silence was not invited error. *Id.*

[97]   *Id.* ("Thus, since the failure to object to the final comment has not been shown to have been a tactical or strategic decision, the [S]tate's argument does not compel us to disregard the error. We must still, of course, determine whether this remark constituted plain error.").

[98]   994 P.2d 1004, 1006 (Alaska 2000).

[99]   *Id.*

at the hearing.[100]  The State responded that Raphael abandoned his right to appeal his absence from the ex parte hearing (and the hearing's allegedly coercive effect on the key witness's testimony) because his attorney failed to object to, and thus preserve, these alleged errors during trial.[101]  The State argued that the tactical-decision prong should bar further review because Raphael's failure to object might have been tactical and Raphael could have obtained a benefit from his failure to object.[102]

We rejected such speculation because it "assume[d] that Raphael's attorney had a sufficiently accurate view of the scope of the error and deliberately chose to waive any objection."[103]  We compared the situation in *Raphael* to *Noffke v. State*, where we held that defense counsel's failure to object was not a tactical decision because the record failed to demonstrate that defense counsel was aware of the error asserted on appeal.[104]  And we noted that we had requested that both parties search the trial record for "*any* evidence, . . . of [Raphael's attorney's] knowledge of the ex parte hearing and the surrounding circumstances," but that "[n]either party found any such references."[105]

Based on the lack of support in the record for the conclusion that defense counsel knew the full extent of the constitutional errors and deliberately chose not to

---

[100]  *Id.*

[101]  *Id.* at 1015.

[102]  *Id.* ("Specifically, the State contends that Raphael could have hoped that [the complaining witness's] incarceration would make her hostile toward the prosecution and cause her to slant her testimony in his favor.").

[103]  *Id.*

[104]  *Id.* at 1016 (citing *Noffke v. State*, 422 P.2d 102, 106-07 (Alaska 1967)).

[105]  *Id.* at 1016 n.53 (emphasis added) (explaining our request that the parties provide supplemental briefing on whether the record contained any evidence of defense counsel's knowledge of the hearing, apart from the trial court's limited description of it).

object, we could not say that Raphael's attorney's decision not to object was tactical.[106] Because plain error review was not foreclosed by any tactical decision not to object, we held that the error complained of (1) was obvious; (2) was substantially prejudicial; and (3) undermined the fundamental fairness of the trial and contributed to a miscarriage of justice.[107] Concluding there was plain error, we remanded Raphael's case for a new trial.[108]

In sum, these cases consistently demonstrate our reluctance to foreclose plain error review on tactical-decision grounds. Evidence of a tactical decision not to object to a trial error must be plainly obvious from the record to persuade an appellate court that a defendant's otherwise meritorious substantive claim of error should not trigger appellate review.[109] This rule was further underscored in *Adams v. State*.[110]

### 3. The tactical-decision analysis in *Adams v. State*, 2011

All parties agree that our decision in *Adams* governs the outcome of the present cases. Moreno and Hicks argue that *Adams*'s reliance on *Dorman*, *Owens*, *Pulakis*, and *Hammonds* indicates that we intended defense counsel's tactical decisions to operate as implied waivers of future appeals, with the State bearing the burden of proving that a decision was tactical. Moreno and Hicks also read *Adams* as precluding

---

[106]   *Id.*

[107]   *See id.* at 1015.

[108]   *Id.* at 1015-16.

[109]   *See, e.g.*, *Hammonds v. State*, 442 P.2d 39, 42-43 (Alaska 1968).

[110]   261 P.3d 758, 773 (Alaska 2011).

plain error review where the benefit conferred on the defendant is readily apparent on the record.[111]

The State does not read *Adams* as requiring proof of an express or implied waiver or a discernable benefit on the defendant. According to the State, nothing in *Adams* suggests that these are the only types of tactical decisions that will preclude plain error review. The State instead attempts to factually distinguish *Adams* and the cases it relied on to convince us to adopt the court of appeals' line of cases.[112]

*Adams* began its analysis of the plain error rule by discussing how our cases "have consistently held that plain error does not exist where the right at issue was intelligently waived or the defendant's decision not to object to the error was strategic or tactical."[113] We underscored our analysis in *Dorman* that where there is "no evidence" that defendant's failure to object was strategic, there is "no basis for inferring that the

---

[111]    Moreno and Hicks cite *Adams*'s discussion of *Dorman*, where we explained: "[W]here a defendant 'neither injected the issue of his silence into the case nor obtained a benefit from the prosecutor's inculpatory comment,' there [was] no basis for inferring that the failure to object was tactical 'unless it is implied that defense counsel invited error for the purpose of obtaining a reversal on appeal.' " *Adams*, 261 P.3d at 773 (quoting *Dorman v. State*, 622 P.2d 448, 458 (Alaska 1981)).

[112]    The State argues that we should explicitly adopt the court of appeals' standard for deciding whether a failure to object was tactical. Under this standard, the court of appeals reviews the trial court record for any "plausible" tactical reason for defense counsel's failure to object, *Borchgrevink v. State*, 239 P.3d 410, 422 (Alaska App. 2010), and "unless the record precludes the possibility that counsel's actions may have been tactical, a finding of plain error is rarely appropriate." *Massey v. State*, 771 P.2d 448, 453 (Alaska App. 1989). Under the court of appeals' approach, if the court can divine a conceivable tactical reason or the record is silent or ambiguous, that court applies a presumption that the defense attorney's decision was tactical, and then the burden shifts to the defendant to prove that counsel's decision was not tactical. *Borchgrevink*, 239 P.3d at 421.

[113]    *Adams*, 261 P.3d at 770.

failure to object was tactical 'unless it is implied that defense counsel invited error for the purpose of obtaining a reversal on appeal.' "[114] And we stated that this implication "*is not one which should be inferred lightly*, for it would preclude review of the most fundamental defects under the plain error doctrine."[115] This statement recognized the central focus of plain error review:

> [The rule] [is] intended to ensure that litigants have a means for the prompt redress of miscarriages of justice, and it applies only when the error was so plain that the trial court and prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it. It also reflects a careful balancing between the Court's intention of encourag[ing] all trial participants to seek a fair and accurate trial the first time around and the Court's insistence that obvious injustice be promptly redressed.[116]

In *Adams*, we cautioned that appellate courts should concentrate on the substantive requirements of plain error review: the obvious nature of the error, the substantial rights the error affected, and the prejudice that resulted from the error.[117] Inferring a tactical

---

[114]    *Id.* at 773 (quoting *Dorman*, 622 P.2d at 458).

[115]    *Id.* (emphasis added) (quoting *Dorman*, 622 P.2d at 458) (internal quotation marks omitted).

[116]    Larry Cunningham, *Appellate Review of Unpreserved Questions in Criminal Cases: An Attempt to Define the "Interest of Justice,"* 11 J. APP. PRAC. & PROCESS 285, 298 (2010) (third alteration in original) (footnote omitted) (quoting *United States v. Frady*, 456 U.S. 152, 163 (1982)) (internal quotation marks omitted).

[117]    *Adams*, 261 P.3d at 770, 773 (noting that "our [earlier] cases . . . consistently define[d] plain error as error that affects substantial rights and is obviously prejudicial," but noting that three substantive requirements must now be met: there "must be error . . . ; the error must be obvious, meaning that it should have been apparent to any competent judge or lawyer; . . . the error must affect substantial rights, meaning that it must pertain to the fundamental fairness of the proceeding; and . . . the
(continued...)

decision or intelligent waiver of a known right on a silent or ambiguous record would serve only to impede substantive review of the error.

Adams and the cases it relied upon thus stand at odds with the court of appeals' conclusion in Moreno that "when the record is silent or ambiguous[,] . . . [the court] appl[ies] a presumption that the defense attorney's . . . inaction . . . was tactical."[118] It was also error to place the burden on the defendant to negate the possibility that his attorney's failure to object was tactical.[119]

The same error was made in Hicks, where the court of appeals held that "Hicks must . . . show that the error was not the result of her attorney's tactical decision not to object."[120] We have never placed this burden on the defendant. Hicks cited our analysis in Khan v. State,[121] but Khan only reaffirmed the "Adams rule" that "includ[es] an inquiry into whether the defendant's non-objection was tactical, [which] better respects the trial process and the role of counsel."[122]

Whether the defendant made a tactical decision not to object or intelligently waived an opportunity to object must be plainly obvious from the face of the record, not presumed in the face of a silent or ambiguous record. The records in Moreno and Hicks

---

[117](...continued)
error must be prejudicial").

[118]  Moreno v. State, Mem. Op. & J. No. 5819, 2013 WL 120907, at *5 (Alaska App. Jan. 9, 2013), reh'g denied, 2013 WL 120907, at *5 (Alaska App. Feb. 7, 2013) (quoting Borchgrevink, 239 P.3d 410, 421 (Alaska App. 2010)).

[119]  Id.

[120]  Hicks v. State, Mem. Op. & J. No. 5911, 2013 WL 203264, at *4 (Alaska App. Jan. 16, 2013) (citing Khan v. State, 278 P.3d 893, 901 (Alaska 2012)).

[121]  Id. at *4 (citing Khan, 278 P.3d at 901).

[122]  Khan, 278 P.3d at 901.

do not reveal plainly obvious evidence of tactical decisions not to object by defense counsel. Because the court of appeals improperly placed the burden on Moreno and Hicks to prove that their attorneys did not make tactical decisions, and because the court of appeals improperly applied a presumption of tactical inaction in the case of a silent or ambiguous record in *Moreno,* we reverse the court of appeals' conclusions regarding the tactical-decision determination in both cases.[123]

B.      **We Affirm The Court Of Appeals' Conclusion That The Error In Moreno's Case Was Not Prejudicial.**

In *Moreno*, the court of appeals also addressed the prejudice prong of plain error review. The court held that admitting the arresting officer's statement regarding Moreno's decision to remain silent did not result in prejudice because admitting the statement was harmless beyond a reasonable doubt.[124] Moreno argues that the court of appeals erred in reaching that conclusion.

*Adams* considered what would constitute prejudice and held that

> [a] constitutional violation will always affect substantial rights and will be prejudicial unless the State proves that it was harmless beyond a reasonable doubt. An error that is not constitutional in nature will be prejudicial if the defendant

---

[123]     We note that the court of appeals recently discussed the tactical-decision principle in *Anderson v. State*, 337 P.3d 534, 543-44 (Alaska App. 2014). We had previously remanded the *Anderson* case to the court of appeals for its reconsideration of this issue in that case. The court of appeals decided not to reconsider its earlier determination of the tactical decision in that case in light of its alternative holding that the jury instruction error in *Anderson* was harmless beyond a reasonable doubt. *Id*. at 544.

[124]     *Moreno*, 2013 WL 120907, at *3.

proves that there is a reasonable probability that it affected the outcome of the proceeding.[125]

We identified several factors that a reviewing court must consider in determining whether a trial court's failure to take remedial action regarding a prosecutor's comments on a defendant's silence constituted harmless error. These include (1) whether the conviction depended primarily on conflicting witness testimony; (2) whether the comment occurred during closing argument; (3) whether the comment was "express" rather than "brief and passing"; and (4) whether the evidence was "directly elicited by the prosecutor's questioning."[126]

Moreno was convicted at trial of delivery and possession of methamphetamine.[127] On cross-examination, Moreno's defense attorney asked the investigating officer whether the officer had been able to identify the owner of a jacket that contained a methamphetamine pipe. The officer replied that there were "no identifying items [in the jacket] *and the defendant refused to speak to us about it*, but we did photograph where that — that came out of," at which point the defense attorney interrupted and directed the officer to answer yes or no. (Emphasis added.) This was the only reference in the entire course of trial implicating Moreno's constitutional right to be free from self-incrimination.[128]

---

[125]     *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011).

[126]     *Id.* at 774-75 (quoting *Van Hatten v. State*, 666 P.2d 1047, 1056 (Alaska App. 1983)).

[127]     *Moreno*, 2013 WL 120907, at *1.

[128]     *See* Alaska Const. art. I, § 9 ("No person shall be compelled in any criminal proceeding to be a witness against himself."); *Moreno*, 2013 WL 120907, at *2 ("Evidence of a defendant's post-arrest silence in response to police questioning is generally inadmissible under Article I, section 9 of the Alaska Constitution. In addition,

(continued...)

By comparison, in *Adams,* the prosecutor made two remarks on cross-examination that directly addressed Adams's post-arrest silence:

> [PROSECUTOR]: And then you refused to talk to police any further. Correct?
>
> [ADAMS]: That's right.
>
> [PROSECUTOR]: Okay. Until today?
>
> [ADAMS]: I was exercising my right.[129]

And then again:

> [PROSECUTOR]: Now, new information that we heard from you today is everything that happened in your apartment, correct? Would you agree to that? From your perspective?
>
> [ADAMS]: What do you mean by everything?
>
> [PROSECUTOR]: Well, we didn't know anything about what happened in your apartment from you, because you

---

[128](...continued)
a defendant's pre-arrest silence will usually be inadmissible under Alaska Evidence Rule 403 because its probative value is inherently low and the danger of unfair prejudice is inherently high." (footnote omitted)).

We note that the court of appeals did not explicitly determine whether Moreno was under arrest when he was questioned about the jacket, but assumed that he was, at the very least, detained when the questioning occurred. *Moreno*, 2013 WL 120907, at *2. The court of appeals therefore analyzed the officer's comment under the higher "harmless beyond a reasonable doubt" standard employed when the alleged error implicates a constitutional right. *See id.*; *see also Adams*, 261 P.3d at 771. Because our decision to affirm the court of appeals' conclusion in *Moreno* regarding the lack of prejudice would be the same under either the pre- or post-arrest standard as stated in *Adams*, 261 P.3d at 773, whether Moreno was under arrest at the time of his statement is irrelevant.

[129]     *Adams*, 261 P.3d at 770.

didn't talk to police, until after hearing all the evidence so far in the case.[130]

And during closing argument, the prosecutor again pointed to Adams's silence to argue that Adams's testimony was less credible than the victim's.[131]

The prosecution's conduct in *Adams* was egregious, continued over a protracted period, and went to the core of the prosecution's theory of the case, namely, that Adams was not credible and "changed his decision not to talk when he learned about the DNA evidence indicating that he had sex with [the underage victim]."[132] The facts in *Moreno* are far less compelling: the officer's comment was elicited by defense counsel; it was made in passing; and the prosecutor did not refer to it during his closing argument.

Accordingly, we agree with the court of appeals that the officer's testimony "had little impact on Moreno's trial" and was "harmless beyond a reasonable doubt" under the four factors of *Adams* that a reviewing court considers when determining whether a court's failure to address a prosecutor's comments on a defendant's silence was harmless error.[133] We thus affirm the court of appeals' decision in *Moreno* on this alternate ground.

## V.    CONCLUSION

We REVERSE the court of appeals' decisions foreclosing plain error review in both *Hicks* and *Moreno*, but we AFFIRM the court of appeals' decision in

---

[130]    *Id.*

[131]    *Id.* at 762.

[132]    *Id.*

[133]    *Moreno*, 2013 WL 120907, at *3.

*Moreno* on the alternate ground that the error was not prejudicial.  We REMAND *Hicks*

for further proceedings consistent with this opinion.